[Civil No. 3747.   Filed October 19, 1936.]

[61 Pac. (2d) 441.]

OMPHIE B. COLEMAN and MARY E. COLEMAN, Husband and Wife, Appellants, v. C. P. COLE-MAN, Appellee.

Mr. V. L. Hash, for Appellants.

Mr. L. C. McNabb, for Appellee.

LOCKWOOD, C. J.—C. P. Coleman, hereinafter called plaintiff, brought suit against Omphie B. Coleman and Mary E. Coleman, his wife, hereinafter called defendants, asking that a certain deed executed by plaintiff in favor of defendants be canceled; that it be adjudged that the property described in the deed is held in trust by defendants for plaintiff; and that the possession thereof be restored to plaintiff; and defendants be required to account for the moneys received as rentals from the property.

Defendants answered alleging: (a) That the property so conveyed to them was, as a matter of fact, originally held by plaintiff in trust for the defendants, and that the conveyance by plaintiff to the latter was in fulfillment of his trust; (b) that the conveyance was made by plaintiff for the purpose of defrauding his wife in a divorce proceeding which was about to be instituted; (c) that defendants had offered to reconvey the property to plaintiff if plaintiff would pay to them all the money which he owed them, and (d) that after the execution of the conveyance and a declaration of trust by defendants in favor of plaintiff, the former offered to reconvey the property to plaintiff, but he refused to accept such reconveyance

and, by mutual agreement, the declaration of trust was rescinded.

The matter was tried to the court, sitting without a jury. Oral and documentary evidence was offered and the court made findings of fact and rendered judgment thereon in favor of plaintiff to the effect that the deed in question be canceled, and the possession of the property be restored to the plaintiff, but that defendants be allowed to retain such money as they had received from the plaintiff, either directly or as rentals on the premises for the time they had possession thereof, as compensation for any money they had expended either in support of plaintiff or in caring for the property; whereupon this appeal was taken.

There are four assignments of error which raise an equal number of propositions of law. We will state first the facts as we must presume they were found by the trial court, and then discuss the assignments of error as applied to these facts. In August, 1931, plaintiff was a man of approximately 70 years of age, and the father of defendant Omphie B. Coleman. He had little or no education, while his son was a college graduate and a teacher in the Phoenix Colored High School. At the time mentioned, he deeded to defendants lots 1 and 2, in block 18, of Collins Addition to the city of Phoenix, and also turned over to them something like $1,400 in cash and accounts payable. On the same date the parties executed the following agreement:

"This agreement made and entered into this ——— day of August, 1931, by O. B. Coleman and Mary E. Coleman, his wife, first parties, and C. P. Coleman, second party;

"Witnesseth:

"That the said first parties do hereby acknowledge the Bill of Sale given to O. B. Coleman by C. P. Coleman, for personal property, dated August 14, 1931.

The assignment of the Jackson contract from C. P. Coleman to O. B. Coleman, and a deed to Lots 1 and 2, Block 18, Collins Addition to the City of Phoenix, Maricopa County, Arizona, are to be construed to be held in trust by first parties for second party; to be delivered by proper instrument from first party or either of them, to second party, upon demand by second party hereto.

"In witness whereof, both parties have hereunto set their hands the day and year first above written.

"M. E. COLEMAN

"O. B. COLEMAN

"Parties of the First Part.

"C. P. COLEMAN

"Second party."

The principal property had on it a six-room dwelling house, and six other small apartment houses which were yielding a monthly rental of from $45 to $65 per month. All rentals of the premises were retained by defendants and used by them for paying the taxes and necessary maintenance of the premises, and also in part for the board of plaintiff, he continuing to occupy one of the rooms in the six-room house aforesaid; the rest of the house being used by defendants as a home. The money so received was sufficient to pay all of the necessary expenses of maintenance of the premises and of the plaintiff. The latter did bring a suit for divorce against his wife, as alleged by the defendants, but the conveyance to them was made at their suggestion and upon their solicitation, and plaintiff was informed by them and believed that it was the proper and necessary thing to do in the conduct of the suit.

In view of the declaration of trust set forth above, there can be no doubt that defendants were under the obligation to reconvey the property in question upon the demand of plaintiff, unless they could show a legal excuse for not so doing. We there-

fore consider whether the defenses which they set up were legally sufficient or were sustained by the evidence in the case. So far as the claim that the consideration for the conveyance was a debt due from plaintiff to defendants, the court impliedly found that plaintiff owed nothing to defendants when the deed was made, and we are satisfied the evidence in the record was sufficient to sustain such presumed finding.

■■ The second defense is that the conveyance was a fraudulent one intended to defeat the claim of plaintiff's wife to an interest in the property, in the contemplated divorce proceeding, and it is urged that under such circumstances a court of equity will leave the parties where it finds them. We have held in the case of *MacRae* v. *MacRae*, 37 Ariz. 307, 294 Pac. 280, 284, that when a conveyance is made with the purpose of defrauding creditors the test in determining whether the parties come into court with clean hands is the moral intent and not the actual injuries done, and that even though the claims of the creditors are not valid ones "the grantor cannot wash his intentionally soiled hands with the soap of an inability to carry out his intention and thereby invoke the jurisdiction of a court of equity." But we held also that there was an exception to this rule, and when the parties were not *in pari delicto* a court of equity would intervene in protection of the less guilty, and we said a test for the application of this last principle was well stated in the following language in the case of *Chamberlain* v. *Chamberlain*, 7 Cal. App. 634, 95 Pac. 659, 661:

"The law is more indulgent to human infirmity, and less tolerant of deliberate and obtrusive depravity. A. cannot lay a trap for B., secure his confidence, induce him to make a conveyance of his property in the expectation that it will be returned, and thereafter retain the fruits of his perfidy on the

ground that B. too readily yielded to temptation to save himself at the possible expense of creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken.''

It appears from the record in this case that appellant was an uneducated negro, of approximately 70 years of age, while his son, one of the defendants, was a college graduate and teacher in the Colored High School of Phoenix, and that it was under the solicitations and instructions of the son that the father deeded the property. The disparity between the capacity of the two parties and the fiduciary relation naturally existing between them is of such a nature that we think the test above set forth is fully satisfied by the facts of this case, and that the parties were not *in pari delicto*. We hold, therefore, that defendants are not in a position to invoke the rule that he who comes into equity must come with clean hands.

The last and most difficult question comes over the rejection of certain evidence. Defendants offered to prove that after the execution of the deed and trust agreement above set forth, the parties orally agreed to cancel the agreement and that the whole matter would be terminated and the real estate become the absolute property of the defendants. The trial court refused to admit evidence of a parol agreement of this nature on the ground that such an agreement' was within the statute of frauds and also inadmissible under the parol evidence rule. The particular section of our statute which the court had in mind was doubtless subdivision 6 of section 1521, Revised Code of 1928, which reads, so far as material, as follows:

''Statute of frauds. No action shall be brought in any court in the following cases, unless the promise or agreement upon which such action shall be brought,

or some memorandum thereof, shall be in writing and signed by the parties to be charged therewith, or by some person by him thereunto lawfully authorized: . . . 6. upon an agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein. . . . ''

There can be no doubt that the deed and trust agreement in question made defendants the holders of a naked legal title to the property, while plaintiff was the equitable owner thereof. It is well settled that the statute of frauds protects equitable estates in land as well as legal ones, for these estates are, even more than legal ones, exposed to the mischief which the statute was designed to remedy, and had plaintiff attempted to make an oral conveyance of the equitable estate which he had under the trust deed, such a conveyance could not have sustained an action thereon. Nor do defendants deny this. They contend, however, that the statute does not apply to the mere surrender of an equitable estate, and that such an estate may be surrendered to the holder of the legal title by a parol agreement. The question has been before the courts many times, and the decisions are in hopeless variance. According to one view, the statute of frauds contains no provision with regard to the dissolution or rescission of agreements for the sale of land, such as the agreement to recovery in this case, and that a written instrument is not necessary in such cases. *Proctor* v. *Thompson,* 13 Abb. N. C. (N. Y.) 340; *Gorrell* v. *Alspaugh,* 120 N. C. 362, 27 S. E. 85; *Mahon* v. *Leech,* 11 N. D. 181, 90 N. W. 807; *Cunningham* v. *Cunningham,* 46 W. Va. 1, 32 S. E. 998; *School Dist. No. 4* v. *Benson,* 31 Me. 381, 52 Am. Dec. 618; *Brownfield's Exrs.* v. *Brownfield,* 151 Pa. 565, 25 Atl. 92; *Maxon* v. *Gates,* 112 Wis. 196, 88 N. W. 54; *Henderson* v. *Beatty,* 124 Iowa 163, 99 N. W. 716. In many, if not most, of these cases,

however, there was still much to be done by the party who had agreed to surrender his rights to establish or continue them, and there was not only an oral agreement for the rescission or cancellation of the contract, but the parties had fully executed the rescission so far as within them lay by a surrender of possession of the premises, cancellation of notes or mortgages given, or other acts which unequivocally showed that the parties regarded the *status quo ante* as restored. On the other hand, there is a strong line of authorities which holds that parol contracts of this nature are invalid. *Carr* v. *Williams,* 17 Kan. 575; *Grover* v. *Buck,* 34 Mich. 519; *Stewart* v. *McLaughlin's Estate,* 126 Mich. 1, 85 N. W. 266, 87 N. W. 218; *Pratt* v. *Morrow,* 45 Mo. 404, 100 Am. Dec. 381; *Sanborn* v. *Murphy,* 5 Tex. Civ. App. 509, 25 S. W. 459.

After a careful comparison and consideration of the cases and the reasoning upon which they are founded, we are of the opinion that so far at least as an equitable fee simple in land, fully established by a written trust, is concerned, it may not be destroyed by proof of a parol agreement to surrender, rescind or abandon the trust. The provision of the statute of frauds, upon which plaintiff relies, was adopted for the express purpose of preventing existing estates in land from being upset by parol evidence, and since in the present case the equitable title of the plaintiff rested upon a written instrument and required no additional act by plaintiff to vest it, it seems to us a violation of both the spirit and the letter of the statute to hold that that interest could be destroyed by a parol agreement. The offer of proof which was made showed no consideration for the alleged agreement, no restoration of the *status quo ante,* and no affirmative acts of any kind on the part of either one of them attempting to change their

situation. At its best, even if proven as offered, the evidence would have shown only a statement by the plaintiff that he intended voluntarily to make a gift of property worth several thousand dollars to his son, and such a gift cannot be made by parol. We are of the opinion that the trial court did not err in rejecting evidence of the alleged parol agreement.

This disposes of all the questions raised by the assignments of error. We are of the opinion that the judgment of the trial court was justified by both the law and the evidence, and it is therefore affirmed.

McALISTER and ROSS, JJ., concur.