## FREEMAN v. WRIGHT.

No. 34137.   May 15, 1951.

*231 P. 2d 675.*

LaMar & Bailey, Guymon, for plaintiff in error.

M. E. Becker, Guymon, for defendant in error.

JOHNSON, J. The parties herein occupied reverse relative positions in the trial court and hereafter they will be referred to as they there appeared.

Plaintiff, on March 29, 1948, sued defendant in the district court of Texas county, Oklahoma, for a money judgment for breach of an alleged livestock sale and purchase contract, which was made a part of the petition, whereby the defendant sold and agreed to deliver to plaintiff one hundred (100) yearling steers at $18 per cwt., upon which contract plaintiff claimed he paid $3,900 in currency and prayed for judgment for said amount and costs.

The defendant answered admitting execution of said contract, but denied that the plaintiff paid him $3,900, or any other sum. He alleged that said $3,900 was and is a sum won by plaintiff in a gambling game of cards at Texhoma prior to May 7, 1947, the date of the alleged execution of the sale contract.

In reply thereto, the plaintiff denied generally the allegations thereof and specifically denied that the contract sued upon was based upon a gambling debt.

Trial was had to a jury, resulting in a verdict for the plaintiff for $3,900 which was approved by the court and judgment rendered accordingly.

From an order overruling motion for new trial, the defendant appeals.

Defendant argues the assignments of error under two propositions:

(1) That any contract stemming from a gambling transaction, directly or indirectly, is void and unenforceable.

(2) That the verdict is against the clear weight of the evidence.

In support of his first proposition, defendant cites and relies on Brinley v. Williams, 189 Okla. 183, 114 P. 2d 463; McMullen v. Hoffman, 174 U. S. 658, 19 S. Ct. 846, 43 L. Ed. 1124; Smithson v. Love, 132 Okla. 214, 270 P. 23; and 24 Am. Jur., Gaming and Prize Contests, §79 (note 8).

The question of law embodied in this proposition is not disputed and the jury was properly instructed thereon. Therefore, this case must be determined from a consideration of defendant's second proposition, that the verdict of the jury and judgment of the trial court based thereon is not sustained by the evidence.

In an action at law, if there is any competent evidence reasonably tending to sustain the verdict of a jury, and the judgment of the court based thereon, and the instructions fairly state the applicable law, and no prejudicial error is revealed by the record, such judgment will not be disturbed on appeal.

The plaintiff testified that he resides at Beaver, Oklahoma, and was in the farming and ranching business and bought and sold cattle; that he had known the defendant about two years; that on May 7, 1947, he entered into a contract with the defendant for the purchase of 100 steers to be delivered at Texhoma between the 10th and 20th of October, 1947; that he inquired about the cattle and demanded delivery and that the defendant refused to deliver; that he paid as a down payment the sum of $3,900, and upon the refusal of the defendant to refund the down payment or to deliver the animals, he instituted the suit to recover the down payment.

On cross-examination, the plaintiff stated that he had known the defendant about six months prior to the date of the contract which he said was executed in the hotel in Texhoma in an upstairs room between 9:00 and 11:00 a. m.; that he left his ranch at about 6:30 a. m., and drove to Texhoma where the defendant sought him out to sell him the cattle; that at the time of the making of the contract he paid the defendant the down payment in currency, from currency which he had the day before obtained from the bank at Beaver, Oklahoma, in the amount $4,000; that he was on his way to Mexico to buy cattle from the Mexicans; that they would not take his check and always demanded that he pay in cash and that was the reason he had that amount of currency.

On further cross-examination, plaintiff admitted that at one time Freeman had given him a check in the amount of $500 to pay him a gambling debt. He further stated that he had no conversation about the cattle from May 7, 1947, until the 10th of October, 1947.

The contract of sale was introduced in evidence by the plaintiff and reads as follows:

#### "Live Stock Contract"

"This contract made this 7th day of May, 1947, by and between M. H. Freeman of Texhoma, Oklahoma, hereinafter known as the seller, and H. C. Wright of Beaver, Oklahoma, hereinafter known as the buyer, covers the sale of the following described livestock for the consideration of the sum of $3,900.00, part payment, the receipt of which is hereby acknowledged by the seller.

| "Number | Branded |
|---|---|
| 100 | 4 Left hip |
| Description | Price |
| Yearling steers @ | $18.00 per cwt |

said cattle to be cut out of 1100 cattle and delivered from Oct. 10—to Oct. 20—1947, at Texhoma, Oklahoma, and weighed straight.

"These strs. are now located on Freeman Ranch, Tex. Co., Okla., and are

to remain on same until delivered. Delivery to be made on or before Oct-10—Oct. 20, 1947, at the buyers option and to be weighed as follows: without shrink. All strs. are to be sound and in merchantable condition, and free of any contagious disease. Crippled, deformed animals may be rejected by the buyer.

"Health and brand certificate to be furnished by the seller. All are to be delivered free of all encumbrances and with a clear title.

> "M. H. Freeman
> "Seller

"H. C. Wright
  "Buyer"

After testifying as outlined above and with the introduction of the livestock contract in evidence, the plaintiff rested.

The defendant testified, in substance, that he lived in Texhoma; that he is a farmer, rancher and grain dealer, operates a feed mill and feeds cattle; that he knew the plaintiff three or four weeks prior to May 7, 1947, and was introduced to the plaintiff by J. C. Bell, who invited the plaintiff and the defendant to go to the hotel room and have a drink and while there the plaintiff proposed a card game, producing the cards; that the game lasted until daylight the next morning. The defendant further admitted that he had signed the contract and had told the plaintiff that he was going to look into the matter and see if he hadn't been cheated in the card game; that a friend of his, T. N. Pugh, had told him that the plaintiff offered him $1,000 to deal a card game for him and cheat and swindle the defendant out of his money. He further testified that the $3,900 item in the contract was to take up $3,900 worth of checks that he had given for money that had been won from him by the plaintiff.

On re-direct examination, the defendant identified four checks as being the ones given to the plaintiff totaling $3,900 to pay the plaintiff for defendant's losses in the card game.

T. N. Pugh was called to testify on behalf of the defendant and corroborated the statement of the defendant as to the offer of $1,000 to be given him for dealing in the card game and that he refused to do so.

The plaintiff was called in rebuttal and denied that he had the conversation with the witness Pugh but admitted that he talked with Pugh about a cattle deal. He admitted, on cross-examination, that he had received other checks in payment of a gambling debt from the defendant, and that such checks were cashed by J. C. Bell, but denied that the contract in question was based upon any gambling transaction.

Mary A. Tryon, the court reporter, was called by the plaintiff and identified certain testimony given by the defendant Freeman, wherein the State of Oklahoma prosecuted J. C. Bell for the crime of assault with intention to kill, at which trial Freeman testified for Bell as a character witness and stated that Bell's reputation as a law-abiding citizen was good. The record discloses that the defendant had so testified on October 5, 1948.

After a careful examination of the record, including the pleadings, the evidence and instructions to the jury, and finding no prejudicial error, we conclude that the verdict of the jury and the judgment of the trial court based thereon was proper because there was competent evidence, though conflicting, reasonably tending to support the verdict of the jury and judgment of the court. Affirmed.

ARNOLD, C.J., LUTTRELL, V.C.J., and WELCH, CORN, GIBSON, HALLEY, and O'NEAL, JJ., concur.