GRIM et ux. v. CHEATWOOD et al.

No. 35178.    April 21, 1953.

Rehearing Denied June 9, 1953.

*257 P. 2d 1049.*

J. Scott Vincent, Cheyenne, and Dudley, Duvall & Dudley, Oklahoma City, for plaintiffs in error.

A. K. Little and L. D. Hoyt, Oklahoma City, for defendants in error.

HALLEY, C. J. Plaintiffs in their amended petition allege that on and prior to August 14, 1945, the plaintiffs were cotenants and joint owners equally in an undivided one-half interest in all of the mineral rights in and under a tract of land referred to as tract No. 1, located in the NW/4 of section 32, township 13 north, range 23 west, in Roger Mills county, Oklahoma; that plaintiff Orval Grim was the individual owner of mineral rights in a certain tract of land referred to as tract No. 2, located and situated in the NW/4 of section 23, township 15 north, range 21 west, in Roger Mills county, Oklahoma.

That on or about the 12th day of August, 1945, defendant Vernie Cheatwood connived, enticed and induced plaintiff Orval Grim to become engaged in a poker game and with the collusion and collaboration of two of his cohorts, with the use of marked cards, defrauded said plaintiff out of checks totaling the sum of $1,000. That plaintiff Orval Grim, believing that the poker game was honest and on the square, executed and delivered to defendant Vernie Cheatwood certain mineral deeds in return for such checks.

Plaintiff Gladys Grim did not sign either deed. On or about the 1st day of November, 1949, plaintiff Orval Grim discovered that the poker game referred to was instituted through connivance, collusion, and a fraudulent plan of defendant Vernie Cheatwood and his cohorts for the purpose of defrauding him out of his money.

Upon discovery of the fraud plaintiffs brought this action to set aside and cancel the mineral deeds, and pray that such deeds be set aside and canceled and title quieted in them in and to the minerals.

Defendants Cheatwood demurred to the amended petition on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer as to plaintiff Orval Grim but overruled it as to plaintiff Gladys Grim. Plaintiffs appeal and assert that the court erred as a matter of law in sustaining the demurrer to the petition as against plaintiff Orval Grim.

It is the contention of defendants that plaintiffs' cause of action is based on a gambling transaction, a transaction forbidden by law and made a crime by statute, and that in such case neither a court of law nor one of equity will grant relief to either party to enforce any rights growing out of such transaction, but will leave the parties where it found them, and that the trial court therefore ruled correctly in sustaining their demurrer to the petition as against plaintiff Orval Grim.

This, as a general rule, is a correct statement of the law. Freeman v. Wright, 204 Okla. 497, 231 P. 2d 675; Smithson v. Love, 132 Okla. 214, 270 P. 23; Brinley v. Williams, 189 Okla. 183, 114 P. 2d 463.

Plaintiffs concede the general rule to be as contended by defendants. It is their contention, however, that there is a well-established exception to the rule to the effect that where fraud is practiced by the winner in order to obtain his winnings (as is pleaded by them in their petition), equity will not permit such a party to benefit by his fraud and will grant relief to the one less guilty.

We think there is merit to this contention. In 24 Am. Jur., Gaming, §80, p. 456, it is said:

"Some courts, while denying that money fairly lost at play at a forbidden game cannot be recovered back in an aciton, hold that money won by cheating at any kind of game, whether allowed or forbidden, and paid by the loser without a knowledge of the fraud may be recovered, the view being taken that a wager won by such undue means is not won in the eyes of the law, and therefore, the money is paid without consideration and by mistake."

In Lockman v. Cobb, 77 Ark. 279, 91 S.W. 546, the Supreme Court of Arkansas said:

"Where plaintiff was induced to put up large sums of money as a bet on a foot race, it being represented to him that one of the racers was certain to win, but in fact there was no bona fide race, but in a pretended race the other party won, the plaintiff was entitled to recovery the amount lost."

In that case the court said:

"In what wrong or crime were the plaintiff and the defendants in pari delicto? If any, it was a conspiracy by the defendants to defraud the plaintiff and to steal his money; to obtain by deceit and falsehood the money of plaintiff by inducing him to believe that a foot race was to be run and that they were actually wagering their money, one against the other, upon it; and to induce him to believe he was betting upon a foot race. *** But the race was never run. Two men ran, but according to a previous understanding the one upon whom he staked his money fell down, and the other passed out ahead and was declared the winner. *** By fraud and deceit they caused him to make a pretended wager and robbed him of his money, pretending that he had lost it *** and he was not in pari delicto with the defendants."

The same conclusion has been reached under a similar state of facts in Hobbs v. Boatwright, 195 Mo. 693, 93 S.W. 934, and by the Circuit Court of Appeals, 8th Circuit, in Stewart v. Wright, 147 F. 321. In Webb. v. Fulchire, 25 N.C. 485, 40 Am. Dec. 419, the court held:

"Money won by cheating at any kind of game, whether allowed or forbidden, or by means of jugglery, and paid by the loser without knowledge of the fraud, may be recovered back."

The case of Falkenberg v. Allen, 18 Okla. 210, 90 P. 415, cited by defendants, does not sustain their position because there the man that was being duped demanded his money back before the foot race and it was refused and the opinion held that he was entitled to recover the money. That case quoted with approval a statement contained in Hobbs v. Boatwright, supra, which is applicable here, and is as follows:

"The doctrine that courts will not aid a plaintiff who is in pari delicto with the defendant is not a rule of universal application; it is based on the principle that to give the plaintiff relief in such case would contravene public morals and impair the good of society. Therefore the rule should not be applied in a case in which to withhold the relief would, to a greater extent, offend public morals. To promote the good of the public is the highest aim of the court in the application of this doctrine."

Plaintiff Orval Grim, under the allegations in plaintiffs' petition did not voluntarily enter into a real and honest poker game with defendant Vernie Cheatwood and his confederates and lose his money in such a game. He was induced to enter into a fixed and pretended poker game for the purpose of cheating and robbing him of his money by the use of marked cards. Plaintiff had no knowledge of said conspiracy and fraud at the time he entered the game. Upon discovery of the fraud plaintiffs brought this action to set aside the deeds. Under such state of facts he was not in pari delicto with defendant Vernie Cheatwood and his confederates. Lockman v. Cobb, supra.

Plaintiffs' action is not an action to recover losses sustained in a gambling game. Their action is one in equity to cancel and set aside mineral deeds because of fraud in their procurement and lack of consideration for their execution, and since under the pleadings the parties were not in pari delicto, plaintiffs may maintain this action although it will be necessary for them to plead and prove the gambling transaction in order to establish fraud and lack of consideration.

Where the parties are not in pari delicto, equity will intervene in the protection of one less guilty, notwithstanding his unclean hands. Coleman v. Coleman, 48 Ariz. 337, 61 P. 2d 441; Vol. 3 Pomeroy's Equity Jur. 738, §942.

While there are some authorities to the contrary, we think the better rule and weight of authority support the conclusion reached.

Plaintiffs' petition stated a cause of action, and the trial court erred in sustaining the demurrer thereto as against plaintiff Orval Grim.

Plaintiffs' right to recovery will, of course, depend upon the evidence.

Reversed, with directions to overrule the demurrer and for further proceedings in accordance with the views herein expressed.

WELCH, CORN, O'NEAL, and WILLIAMS, JJ., concur. JOHNSON, V.C.J., and DAVISON and BLACKBIRD, JJ., dissent.

DAVISON, J. (dissenting). I am unable to agree with the majority opinion. There can be no question that the plaintiff in error voluntarily entered the card game for the purpose of winning money from his opponents.

Where the parties voluntarily engage in a gambling game, which is prohib-

ited by law, neither courts of law nor of equity, in the absence of a statute authorizing a recovery of gambling losses, should aid or assist either party to enforce rights growing out of the illegal transaction. Courts should not become the arbiters of incidental acts of participants in gambling games which are prohibited by law. Public policy prompts the courts to decline to distinguish between degrees of turpitude of parties who engage in outlawed transactions, since otherwise courts might be compelled to decide which party cheated the most.

In the case at bar, plaintiff actually went through with the gambling game and lost his money for which he executed checks. Then, in exchange for the checks, he executed the conveyances. The most nearly analogous case in the reports is that of Wallace v. Opinham, 73 Cal. A. 2d 25, 165 P. 2d 709, wherein,

"* * * The plaintiff and defendant voluntarily engaged in that unlawful game, in the course of which plaintiff lost the money he now seeks to recover by this suit. The second count of the complaint is necessarily founded on plaintiff's participation in that unlawful and prohibited game. He could not prove the alleged fraud and deceit, by means of which he lost his bets, without evidence showing that the fraud was exercised incident to his participation in that game of cards which is prohibited by statute. * * *.

The court, in that case, used the following language, particularly applicable here:

"* * * Where a party acts illegally, he is to suffer the loss of his money as the consequence, if the money is sought to be recovered, *except where he may have a remedy under the particular provisions of some statute. Here is a case of gaming accompanied with cheating.* Clearly if the gaming had been fair, the law would give no remedy. *The only question then is, whether the fraud will alter the case.* We think it will not. If a man thus voluntarily puts himself in a condition to be cheated, through his illegal act he cheats the government, and the other person cheats him, and they must be left to settle the affair between themselves. * * *"

In my opinion, public morals and the good of society would be best served by following the rule in the above-cited case. The trial court felt that the courts should not decide issues regarding payment of gambling debts, since none of the participants of the unlawful and illegal gambling game could come into court with clean hands. I am, therefore, of the opinion that the trial court should have been upheld in sustaining defendants' demurrer to the petition.

I, therefore, respectfully dissent.

I am authorized to state that Mr. Justice BLACKBIRD concurs in the foregoing views.