107 So.2d 34 (1958)
Lloyd SPECTOR and Estelle J. Spector, his wife, Appellants,
v.
L.T. AHRENHOLZ, individually, and as Trustee, and Mary Ahrenholz, his wife and Boris Spaseff, Appellees.
No. 58-15.
District Court of Appeal of Florida. Third District.
November 25, 1958.
Rehearing Denied December 19, 1958.
*35 O'Connor, Gordon, Breuel & Lee, Miami, for appellants.
Thomas A. Horkan, Jr., Miami, for appellees.
CARROLL, CHAS., Chief Judge.
This is an appeal from a summary final decree in favor of the appellees, dismissing a suit of appellants, who were plaintiffs in the circuit court.
Referring to the parties as they appeared in the circuit court, the plaintiffs Lloyd Spector and Estelle J. Spector sued to recover the one-half undivided interest in certain property owned by them which they had deeded to Ahrenholz, and which they claim was given not absolutely, but for security only. Ahrenholz denied that the deed was for security and claimed it was in repayment of advances, and in payment for services which he and his associates had made and rendered to Crown Fence Company, a corporation of which Spector was the president and principal stockholder.
The matter came before the trial court on defendants' motion for summary final decree, and was considered on the pleadings, and on depositions of the plaintiffs and their attorney and of defendant Ahrenholz. It was disclosed that in March of 1957, when Spector's Crown Fence Company was in need of financial assistance, Ahrenholz and his associates advanced certain monies and otherwise rendered help to the corporation. To secure the advances a deed was made by the Spectors to Ahrenholz, individually and as trustee, of an undivided one-half interest in property owned by the Spectors and being used by the corporation. The deed showed on its face it was given for security, and it called for repayment of the amounts advanced within thirty days. Shortly thereafter, a second deed was made, which replaced the first deed. The second deed was similar in form except that it extended the time for repayment from thirty days to ninety days.
Later, in April, with a Federal withholding tax lien filed against the corporation, and when negotiations were in progress with the corporation's creditors in an effort to continue the business, and after Spector had been sued by a third party to recover a balance owed by Spector on the purchase price of certain stock of the corporation, a third deed covering the property *36 involved was made by the Spectors to Ahrenholz individually, absolute in form. Spector and his wife claim that Ahrenholz came to them with the suggestion that they should make that third deed of their property to him for their "protection". The Spectors testified in their depositions that the deed they signed for that purpose was in blank and not witnessed or acknowledged. Ahrenholz denied that the deed was signed in blank, and said the deed was fully filled out by him before the Spectors signed; and Ahrenholz testified that the third deed was made to him in repayment of monies advanced to the corporation and in payment for certain services performed.
There were issues of fact as to the circumstances of the making of the third deed, and there was an important issue concerning the nature and purpose of that third deed. However, because the Spectors in their complaint had alleged that they signed the third or absolute deed for their "protection", and because Spector in his deposition had stated the deed was for his protection against creditors, the chancellor held that plaintiffs did not come into equity with clean hands, granted defendants' motion for summary final decree, and dismissed the suit.
In so holding, the chancellor was supported by the general rule that a person who makes a conveyance of his property to another for the purpose of hindering or defrauding creditors is without standing in equity and may not maintain a suit to regain such property from the grantee. Kahn v. Wilkins, 36 Fla. 428, 18 So. 584; Tenny v. Hilton Corp., 140 Fla. 521, 192 So. 180; 2 Pomeroy's Equity Jurisprudence, 5th Ed., § 401a; and see Hauer v. Thum, Fla. 1953, 67 So.2d 643.
Appellants contend that this rule is not applicable in the instant case, and they assert that the fact that Ahrenholz induced the making of the deed takes this case out of the general rule. In support of this contention appellants cite and rely on Sliman v. Moore, 198 Ark. 734, 131 S.W.2d 1; Coleman v. Coleman, 48 Ariz. 337, 61 P.2d 441, 106 A.L.R. 1309; and Birney v. Birney, 217 Cal. 353, 18 P.2d 672.
We have examined those cases, and other authorities (e.g. 1 Glenn, Fraudulent Conveyances and Preferences, Rev.Ed., § 119 and 24 Am.Jur., Fraudulent Conveyances, § 123) recognizing the proposition that such a debtor-grantor may recapture his property when the parties are not in pari delicto, as where the grantee obtained the conveyance by fraud or duress or by abuse of a confidential relation. See 3 Pomeroy's Equity Jurisprudence, 5th Ed., §§ 942, 942a, 942b; 24 Am.Jur., Fraudulent Conveyances, § 123, pp. 270-271, the latter stating as follows:
"The relative standing of the litigants may be considered by the court in some circumstances in determining the question whether relief will be granted to a party to the fraudulent transaction. Where it appears that transferrer and transferee were not in pari delicto, a remedy may be accorded to the one who was less guilty than the other. For example, the transferrer may be granted relief from the consequences of the transfer where the evidence shows that the transferee induced him to execute the conveyance by false representation as to the intentions of his creditors, or the danger of losing his property.
"The existence of a confidential relationship between the transferrer and the transferee is of importance in determining their relative standing. It has been held that if a husband obtains a conveyance from his wife, the existence of the marital relation will be sufficient reason to invalidate the conveyance at the instance of the wife. Again, if the parties to the transfer are shown to have been client and attorney, it may be concluded, according to some of the authorities, that they were not in pari delicto, and relief may be granted to the client. However, other cases hold that while the relationship of attorney and client will cause the transaction to be particularly *37 scrutinized to determine the question whether they were actually in pari delicto, the fact of the relation by itself will not create a presumption that one was less guilty of wrong than was the other. The party who was guilty of the greater wrong will not be granted relief.
"A debtor who, in order to delay or defraud his creditors, has transferred property without consideration to a participant in the fraud may on abandoning his fraudulent purpose and apprising the other party thereof, recover possession of the property in order to pay his creditors."
The exceptions stated by those authorities do not cover the present case. The facts of this case as disclosed on the pleadings and by the depositions, do not qualify appellants to receive the aid of the exception to the rule. The parties here were shown to be in pari delicto, and not in that position of unequal guilt, in favor of a grantor, for which the limited use of the exception contended for is sanctioned; and the decree appealed from is hereby affirmed.
Affirmed.
HORTON, J., concurs.
PEARSON, J., dissents.
PEARSON, Judge (dissenting).
While I am convinced that the court's opinion correctly states the substantive law, I doubt its application at the procedural stage involved. It appears that in order to apply the maxim, "He who comes into equity must come with clean hands", the chancellor was required to determine that the plaintiffs and the defendants were "in pari delicto." In order to make this determination it was necessary to weigh the equities between them; therefore, the determination may be better accomplished upon trial than upon motion for summary final decree.
There are some cases in which the plaintiff is shown to be barred from relief regardless of the equities between the parties. In such cases there is no need to weigh the evidence. Since this is not such a case, I hold that the plaintiff should have had his day in court.