PEARSON, Judge.
The appellants sued the appellee in the trial court seeking a declaratory judgment as to the ownership of 21 shares of bearer’s stock in a Honduran airline, known as TAN. The appellee was the daughter of C. N. Shelton and became the administra-trix C.T.A. of her father’s estate after his death. The controversy arose out of appellant’s claim that the appellee converted to her own use 21 shares of stock in TAN. Mr. Shelton during his lifetime controlled the Honduran airline and appellee claimed that she took possession of the 21 shares of stock after his death pursuant to an inter vivos gift from her father.
The cause was tried before a jury and the jury returned a verdict for the plaintiff-appellants. The trial judge set aside the verdict of the jury and entered judgment for the defendant-appellee upon her motion for directed verdict upon which ruling had been reserved. The trial court set aside the verdict and entered judgment upon the following grounds.
^ ‡ * * * *
“NOW, THEREFORE, upon hearing of said Motions and argument of counsel for the respective parties the Court finds that there was no competent evidence upon which Plaintiffs could recover a verdict under Count I of the Second Amended Complaint as a matter of law; the Court further finds that the testimony and exhibits submitted by the Plaintiffs do not support a cause of action against the Defendant, but represent a post mortem attack, by constructing inference on inference, upon the actions, conduct and motives of the decedent, C. N. SHELTON, and thereby represent an attempt to penalize the Plaintiff [sic *] and forfeit her rights and property because of the conduct of her father, and Plaintiff’s decedent, C. N. SHELTON, and that to find otherwise would shock the conscience of the Court, and would constitute a judgment in the nature of *286 an Attainder in violation of Article I, Section 10 of the Constitution of the State of Florida, F.S.A., and Article I, Section 9 of the Constitution of the United States; and the Court further finds that the Plaintiffs occupy the position of their decedent, C. N. SHELTON, and that by virtue of the actions, statements and conduct of the decedent, C. N. SHELTON during his lifetime, the Plaintiffs are estopped as a matter of law from recovering under Count I of the Second Amended Complaint and the Defendant is entitled to a directed verdict upon Count I of the Second Amended Complaint as a matter of law; . . . ”
>}i ‡ s{c sjí i};
On this appeal the appellants have .presented five points. The first and we think controlling point urges that the trial court erred in holding as a matter of law that the estate of the decedent and the beneficiaries under the estate were estopped to contest the alleged gift.
In their brief, the appellants assert that there can be no general estoppel which would preclude a decedent’s personal representative from seeking to recover on behalf of the estate property which is the subject of an asserted inter vivos gift from the decedent. This is certainly true in situations where the decedent himself would not have been estopped by his representations or conduct to claim the subject property if he were alive. However, it has been held that where a decedent was guilty of acts or conduct which would have created an estoppel against him during his lifetime his heirs, beneficiaries, legatees and devisees are also estopped, since they stand in the position of their ancestor. E. g. Alexander v. Colston, Fla.1953, 66 So.2d 673; Pritchett v. Brevard Naval Stores Co., 134 Fla. 649, 185 So. 134 (1938); Mason v. Mason, Fla.App.1965, 174 So.2d 620 ; 28 Am.Jur.2d, Estoppel and Waiver, §§ 119-120. Moreover, it is equally well established that there is such privity between a decedent and the personal representative of his estate that an estoppel arising by reason of a decedent’s conduct may be asserted against his personal representative so that where the decedent would have been estopped his estate is also estop-ped. E. g. Strickland v. Peters, 120 F.2d 53 (5th Cir. 1941); In Re Jamison’s Estate, 202 S.W.2d 879 (Mo., 1947); 28 Am.Jur. 2d, Estoppel and Waiver, § 121.
The facts out of which the estoppel was enforced by the trial court arose as follows. Douglas D. Batchelor testified that as an attorney he had represented C. N. Shelton and TAN Airlines on various occasions over a period of many years. With respect to the 21 TAN shares in issue, Batchelor testified that during the latter part of 1961 or in the early part of 1962, C. N. Shelton told Batchelor that he had given 21 shares of TAN to his daughter, Patricia Spohrer, as a wedding present and requested Batche-lor’s advice and recommendations concerning any U. S. tax consequences of such gift. Batchelor stated that he advised C. N. Shelton that a U. S. gift tax return would have to be filed; that he prepared a gift tax return for C. N. Shelton reflecting the gift of stock; and that C. N. Shelton signed the gift tax return on April 16, 1962. A copy of the gift tax return was introduced into evidence by appellants.
Batchelor further testified that within a few weeks after C. N. Shelton’s death on March 15, 1965, he made inquiry in Honduras concerning 60 shares of C. N. Shelton’s TAN stock which he knew were held in a voting trust by a Honduran bank and initiated steps to obtain the 60 shares from the bank. Subsequently, he had a conversation with Miguel Brooks, Jr., who indicated that he was holding 106 shares.
The evidence before the trial court showed that the deceased C. N. Shelton had for sometime been in danger of losing his company’s right to fly air routes into the United States because the Civil Aeronautics Board was convinced that TAN was controlled by Shelton and not by certain Panamanians listed as owners of the bearer’s shares. The appellee introduced into evidence various exhibits including duly au *287 thenticated copies of the Articles of the Honduran Civil and Commercial Codes relied upon by the appellee, the affidavit of the appellee to the C.A.B. dated November 20, 1961, delineating her ownership of 21 shares of TAN stock, affidavits of C. N. Shelton to the C.A.B., and an authenticated copy of a Honduran gift tax declaration. The appellee also read into evidence the testimony of C. N. Shelton before the C. A.B. on December 19-20, 1961, which previously had been introduced into evidence by appellants.
We hold that the trial court correctly determined that the appellants were estopped as a matter of law from denying the gift of their predecessor after he had obviously carefully planned and carried out all of the essential bases for a gift under Honduran law and had represented to the government of the United States that such a gift was in fact made. This representation was made by the deceased in order to maintain and secure the greatest single asset of the airline which he controlled, that asset being the right to fly routes into the United States. As this court has previously pointed out in Hill v. Lummus, Fla.App.1960, 123 So.2d 365:
* * * * * *
“The evidence discloses, and the administrator’s brief admits, that the original transfer from the decedent to Margaret Russo was an attempt to frustrate the collection by potential creditors of claims against the decedent arising out of an automobile accident. This being true, the decedent during her lifetime would not have been in a position to force a reconveyance of the property, for it is settled law in this state that a court of equity will not assist one in extricating himself from circumstances which he has created. Such a situation was presented in Scott v. Sites, Fla. 1949, 41 So.2d 444, 445.”
******
See also Spector v. Ahrenholz, Fla.App.1958, 107 So.2d 34, where this court af-
firmed a holding of a chancellor upon the same rule.
******
“In so holding, the chancellor was supported by the general rule that a person who makes a conveyance of his property to another for the purpose of hindering or defrauding creditors is without standing in equity and may not maintain a suit to regain such property from the grantee. Kahn v. Wilkins, 36 Fla. 428, 18 So. 584; Tenny v. Hilton Corp., 140 Fla. 521, 192 So. 180; 2 Pomeroy’s Equity Jurisprudence, 5th Ed., § 401a; and see Hauer v. Thum, Fla.1953, 67 So.2d 643.”
******
We think that the appellant has not made error appear and that the trial judge was correct in his application of the established law to this case. It therefore became his duty to take the case from the jury and to direct a verdict for the defendant. We have examined the other points presented and find that none of them presents reversible error in view of our holding above.
Affirmed.

 Defendant