279 So.2d 58 (1973)
Marcella SCHETTER, Appellant,
v.
C.B. SCHETTER and Ernest Tashea et al., Appellees.
No. 71-403.
District Court of Appeal of Florida, Fourth District.
June 8, 1973.
Rehearing Denied July 2, 1973.
Donald I. Bierman and Joseph A. Barley, Miami, for appellant Marcella Schetter.
Thomas B. Duff and J. Carrington Gramling, Jr., of Duff, Brown & Gramling, Miami, for appellee C.B. Schetter.
Walter Urchisin, Deerfield Beach, for appellee Ernest R. Tashea.
PER CURIAM.
This is an appeal from a final judgment rendered by the Circuit Court for Broward County, Florida. The suit commenced with a complaint for divorce filed in 1966 by Mr. C.B. Schetter against his wife, Marcella. An amended complaint was filed which joined as additional defendants one Ernest R. Tashea and Mar-Ken, Inc., a Florida corporation, and sought a determination of the ownership of certain assets of which the plaintiff was allegedly divested by fraud or duress. Subsequently Marcella Schetter filed a separate action in the Broward County Circuit Court against Tashea and others to establish equitable title in Marcella Schetter to certain properties allegedly acquired from her by fraud. The two actions were consolidated in the trial court.
Testimony was taken over an extended period of time beginning in October 1969. Thereafter the trial court made extensive findings of fact which have been of immeasurable assistance to this court. The court found that each party to the marriage was entitled to an undivided one-half interest in all the property of either such party  regardless of the formalities of title, and that Mrs. Schetter was guilty of extreme cruelty and adultery.
The final decree awarded Mr. Schetter a divorce; gave Mr. Schetter a one-half interest in all assets theretofore titled either jointly with Mrs. Schetter or in her name alone; held that all conveyances by Marcella Schetter or Mar-Ken to Tashea should be taken as only conveying Mrs. Schetter's one-half interest and subjected such properties to an equitable lien in the *59 favor of Mr. Schetter or in the alternative directed a reconveyance of the properties to Mr. Schetter; and held Marcella Schetter estopped from recovering property which she had placed in the hands of Tashea in order to defraud her husband. By virtue of the latter holding, the trial court left Marcella Schetter denuded of all of her properties which were then in the hands of Ernest Tashea.
The appellant, Marcella Schetter, has presented seven points for review by this court. In our opinion, only one point has merit and requires discussion. That is appellant's second point which asserts:
"THE TRIAL COURT ERRED IN REFUSING TO SET ASIDE THE CONVEYANCES BY MARCELLA SCHETTER TO APPELLEE TASHEA
This point arises out of the holding contained in paragraph "4" on page 20 of the final judgment. It reads:
"4. MARCELLA SCHETTER be, and she is, hereby estopped from recovering any property she has conveyed to ERNEST R. TASHEA. This shall particularly include the assets listed in the preceding paragraph. Being without clean hands, equity will leave her where it found her ...".
The trial court cited in support of its holding three cases which stand for the general rule that a grantor of property is estopped to assert a claim to property which he conveyed for the purpose of hindering his creditors. In Maxwell v. Sullivan, 1936, 123 Fla. 263, 166 So. 575 and Hill v. Lummus, Fla.App. 1960, 123 So.2d 365, the facts indicated that the grantee in favor of whom the estoppel worked was an innocent third party. In Spector v. Ahrenholz, Fla.App. 1958, 107 So.2d 34, the third case cited by the trial court, the District Court applied the rule, with the result that a grantor was not permitted to show that a deed which he had previously executed was intended as a security device rather than a deed absolute. The opinion in Spector v. Ahrenholz recognizes an important exception to the principle mentioned above. At page 36, the court said:
"We have examined those cases, and other authorities... recognizing the proposition that such a debtor-grantor [a fraudulent conveyor] may recapture his property when the parties are not in pari delicto, as where the grantee obtained the conveyance by fraud or duress or by abuse of a confidential relationship."
In our opinion, the exception should have been applied in the present case.
The trial court found that Marcella was emotionally disturbed and subject to undue influence. The evidence indicates that Tashea had so much control over Marcella that he was able to induce her to completely repudiate recent in court testimony. The court found that Tashea was an opportunist without independent means, and had virtually nothing when he met Marcella, and that all property he obtained thereafter came from Marcella's property or from property jointly titled in Marcella and C.B. Schetter.
These facts which are recited in the Final Judgment suggest to us that the trial court should have considered Tashea not to have been in pari delicto with Mrs. Schetter, but to have been, as between the two, the more guilty party. Accordingly we reverse the holding in paragraph "4" on page 20 of the final judgment and, to the extent only that it depends on the holding in said paragraph 4, the holding of the court in paragraph 6 of the final judgment. In all other respects the final judgment is affirmed.
On remand the trial court should amend the final judgment, after taking such additional evidence as it may be advised, to allow appellant Marcella Schetter to recover all properties she caused to be conveyed to Tashea (or to any entity controlled by *60 him) as a part of her scheme to divest her husband of any interest therein.
Affirmed in part; reversed in part, and remanded with instructions.
REED, C.J., and CROSS, J., concur.
WALDEN, J., dissents with opinion.
WALDEN, Judge (dissenting):
I would have preferred that we merely affirm the appealed judgment[1] without opinion on the basis of no demonstrated appellate merit.
The wife was guilty of reprehensible conduct and it is not conceivable to me that this court would soil its hem by wading into the filthy morass which she created to rescue her. Clearly and without the slightest doubt, Mrs. Schetter was guilty of fraud, deceit, duress, adultery and of perjury in lying to the trial court in the most brazen and self-serving fashion. Regardless, this court treats her as if she were as pure as the proverbial driven snow. Instead of leaving her where she was found and where she deserved to be, we reward her as we might a good and dutiful wife. She was granted one half of the marital property. Further, we here recover the estate for her from the hands of her lover, he being one of her equally vile co-conspirators, where she had placed it as a part of her fraudulent scheme.
Very shortly, the husband was a successful business man in Wisconsin and, among other things, owned a bar where the wife to be was employed as a bar-maid. They married in 1948 and ten years later moved to Fort Lauderdale. By 1965 the parties had a worth in assets of about $750,000.
In February 1965, the wife falsely and as a part of a fraudulent scheme which she designed, filed incompetency proceedings against her husband and caused him to be committed. As a consequence and by way of repugnant duress and threats to continue his incarceration if he didn't meet her demands, all the property was signed over to her by the husband. Thereafter, still tracking the scheme, Mrs. Schetter became a free dealer and began to wheel and deal with the assets.
In September 1966 Mrs. Schetter met Tashea with whom she later consorted and committed adultery.
In December 1966 Mr. Schetter filed suit in an attempt to recover some of the assets and right the situation, and to obtain a divorce. At this time Mrs. Schetter and her friend Tashea hit upon a plan to defeat Mr. Schetter's efforts. Mrs. Schetter testified, in effect, that she wanted to divest herself of the holdings in question until this "deal" (divorce proceedings and accounting) was concluded. Thus as a part of the common design, a design she conceived and initiated, Mrs. Schetter conveyed the property to Tashea. The conveyance, as the court correctly found, "* * * was without sufficient consideration and was founded upon fraud as a result of a conspiracy between Marcella Schetter and Tashea to deprive C.B. Schetter of any rightful claim of demand."
It is the action of this court in overruling the trial court to cause the re-delivery of this property to Mrs. Schetter from Tashea that causes me to file this dissent.
The trial court specifically made certain findings as follows which are manifestly supported by the evidence in the record. I simply see no proper appellate way to ignore and override these findings just because we may prefer another outcome. Judge Booher recorded:
"The Court has carefully weighed the comparative equities of the parties. It becomes obvious that C.B. SCHETTER *61 was defrauded out of his share of the family fortunes by MARCELLA SCHETTER and, to a great extent, with the cooperation of TASHEA. The Court finds that MARCELLA SCHETTER and TASHEA are in pari delicto in this effort. The Court finds, however, that the principal moving party in this effort to defraud C.B. SCHETTER was MARCELLA SCHETTER. The Court finds that MARCELLA SCHETTER was the more active and affirmative conspirator." (Emphasis supplied.)
* * * * * *
"4. MARCELLA SCHETTER be, and she is, hereby estopped from recovering any property she has conveyed to ERNEST R. TASHEA. This shall particularly include the assets listed in the preceding paragraph. Being without clean hands, equity will leave her where it found her. Hill v. Lummus, Fla.App. 1960, 123 So.2d 365; Spector v. Ahrenholz, Fla.App. 1958, 107 So.2d 34; Maxwell v. Sullivan, 123 Fla. 263, 166 So. 575 (1936)."
Just from the sequence of events, it is clear that Mrs. Schetter had already conceived the plan of fraud, deceit and duress and had already illegally obtained all of the property  all before she ever met Tashea. Without going into all the myriad of details, the transfers to Tashea were made after suit was filed and were just a small part of the scheme to defraud.
It is true, as suggested, that Mrs. Schetter became emotionally disturbed during the course of the trial. However, it is most apparent, as mentioned in the order "* * * that Marcella Schetter's emotional security was greatly threatened by many aspects of the present situation * * *." Interpreted, this means that she became upset as she recanted and lied to the court under oath one way and the other because it was becoming evident that her scheme to defraud her husband was falling apart.
Interesting, too, is the fact that the able trial judge who lived with and worked so hard with this case gave the matter of her emotional upset precisely no weight or effect in reaching his judgment. Again, he specifically found the wife and Tashea in pari delicto and that Mrs. Schetter was the principal moving party and the more active and affirmative conspirator.
There is perhaps no principle more strongly ingrained in equity jurisprudence than the clean hands doctrine:
"One who seeks the aid of equity must do so with clean hands. This maxim is one of the general and fundamental principles of equity jurisprudence. It is the counterpart in equity of the defense of entrapment in criminal law.
"Equity is a court of conscience; it demands fair dealing in all who seek relief, and requires decency, good faith, fairness, and justice. Equity cannot be invoked for selfish or ulterior purposes.
"Where a litigant fails to meet such a standard equity will deny all relief, and if both parties are at fault, relief will be withheld from both." 12 Fla.Jur., Equity § 54, pp. 211-212.
See also 12 Fla.Jur., Equity, § 55.
Further, when the parties are in pari delicto the court will leave them where it finds them to settle their disputes without the aid of the court. See 5 Fla.Jur., Cancellation, Reformation, and Rescission of Instruments, § 45; 13 Am.Jur.2d, Cancellation of Instruments, § 48; Spector v. Ahrenholz, Fla.App. 1958, 107 So.2d 34.
For these reasons and primarily because I feel no error has been demonstrated in that the appealed judgment was soundly conceived and well founded in fact and law, I would affirm same in toto.
NOTES
[1] It should be recorded that the able trial judge handled this unpleasant case with great patience and care, and his excellent twenty-two page judgment was of much benefit to us in understanding this case.