OPINION OF THE COURT — by the
Hon. EDWARD TURNER.
The bill charges, that Alexander McAuley lost theamount in con *308 troversy, by playing at a game, called faro, or at a faro bank, owned and kept by the defendants Mardis and Bull, in the town of Washington, in this state, that after the complainant had played for some time and lost $400; he quit pldy, but was prevailed on to continue, in order to keep John Branch at play, that he, the complainant should be considered as playing for nothing; that he did continue to bet, under this understanding, and lost $300 more; that he then quit, and paid the $400; that some time after Bull called on him for his note, and requested it should be made payable to John Branch. McAuley objected to giving his note, but was prevailedón to do so, for reasons assigned in the bill; that he was sued at law, in the name of Branch, plaintiff (use of A. Mardis who obtained judgment thereon.)
Mardis, Bull, and Branch are made defendants to the suit in chancery. It does not appear that Bull ever answered the bill. Mardis and Branch answered, and there is a general replication. After this, McAuley, the complainant died, Branch administered on his' estate, filed a bill of revival, and the cause proceeded to a final hearing on the bill, answers and several depositions, whereupon the Chancellor decreed a perpetual injunction, and Mardis appealed.
The cause now stands for hearing, on its merits, de novo.
The counsel for Mardis objects, 1st. to the deposition of Branch, on the ground of'his- interest, he having become McAuley’s security in a forthcoming bond given in the case, and 2d, to the answer of Branch, being used or considered, so as to affect the interests of Mardis, who is his co-defendant; but we are not inclined, now to settle the practice on this point,-as the court finds in the record sufficient evidence, to sustain the complainants cause, independent of Branch’s testimony.
The note in question was made by McAuley, payable to John Branch. It does not appear that Branch was a party to the note by any act of his, not even by his endorsement. How then did Mardis become the proprietor thereof? It must have been by the mere act of delivery thereof to him by Bull. What did Mardis give for this note? We have no evidence of the consideration paid by him to Bull for this note, other than that of Mardis himself. He does not shew any authority for using the name of John Branch as a plaintiff at law; Branch can only be considered *309 as a fictitious payee. Bull has not answered the Bill of McAuley, and we have no account of him, since he obtained the note from McAuley. Mardis does not deny that the note was given for.a gaming consideration, a fact which is positively and particularly set out in the bill, as filed and ¡3worn to, by McAuley; but Mardis seeks to avoi.d this point, by stat-, ing, that when he showed this note to McAuley, he acknowledged its justness, and promised to pay it. This being a matter in avoidance, a new and distinct fact, first stated in the answer, requires proof, legal proof, inasmuch as McAuley has had fio opportunity to answer it.
There is also abundant proof of gaming among all these parties about the time the note was given. There is much circumstantial evidence to support the allegations in the bill; but none to support the answer of Mardis.
It is contended however, on the part of Mardis, that this defence should have been made at law; that when the suit on the note was pending at law, the defendant at law might have sustained his defence, either by witnesses, if hé had them, or by a bill of discovery. To this it is answered, that our act of assembly has given the court of chancery jurisdiction, in all cases of gambling consideration, to sustain a bill for discovery, or to enjoin judgments at law: Rev. Code, p. 328, Sec. 22, that the defendants not having pleaded the judgment at law, or demurred to the complainant’s bill but having answered and gone to trial on the facts and equity of the case, it is too late now, to rely on the trial at law, in bar of the relief sought by the bill. The court sustains this latter view of the case, and are fully supported by authorities from other courts, and by decisions repeatedly had in this court, and especially (by the case of Erwin and Wright vs: Ben. Roach. There is no doubt of the jurisdiction of this court, since the passage of the act above cited, in cases of gaming consideration; and he who would question its exercise, in any given caso must shew the reason why the court wi.ll not exercise it. Has this matter, of gaming consideration ever been enquired into, or adjudicated in a court of law? If it has, why was it not pleaded? If it has not, then, on a proper case being made, by bill, answer and depositions, the court will in this, as in other cases, decide on the issue joined between the parties
*310 We are entirely satisfied, that the decree of the chanceller is correct, and the same is affirmed, at the costs of the appellant.
Judge Black dissents.