Jack K. BERMAN, Appellant,

v.

RIVERSIDE CASINO CORPORATION, H. J. Munley, Emmet Munley, William Miller, First Doe and Second Doe, Appellees.

No. 18341.

United States Court of Appeals Ninth Circuit.

Oct. 28, 1963.

---

978

Frank R. Petersen, Reno, Nev., James Martin MacInnis, Jack K. Berman, and Cyril Viadro, San Francisco, Cal., for appellant.

Belford & Anglim, and John Belford, Reno, Nev., for appellee H. J. Munley.

Before HAMLEY, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

■ In the State of Nevada there exists what appears to us to be a curious conflict between the Legislature and the Supreme Court as to the public policy of the state in relation to gambling houses. The Legislature has enacted a statute reading as follows:

"It is hereby declared to be the policy of this state that all establishments where gambling games are conducted or operated or where gambling devices are operated in the State of Nevada shall be licensed and controlled so as to better protect the public health, safety, morals, good order and general welfare of the inhabitants of the State of Nevada." (Nevada Revised Statutes § 463.130)

Pursuant to this public policy Nevada has enacted elaborate laws under which gambling houses are licensed, supervised and regulated. We take judicial notice of the fact that by reason of these statutes there has grown up in Nevada an extensive gambling "industry"; indeed it may be the principal industry of that state. Not only does the state permit and regulate gambling, but through license fees and taxation it is a major participant therein. (See the concurring opinion of Judge Pope in Marshall v. Sawyer, 9 Cir., 1962, 301 F.2d 639, at 648–651)

On the other hand, the Supreme Court of Nevada has held that the common law rules reflecting hostility to gambling, including at least parts of the Statute of Anne (9 Anne C. 14), are in effect in that state. In Scott v. Courtney, 1872, 7 Nev. 419, the Nevada court held that the operator of a licensed gambling casino could not recover his winnings from a party who had gambled in the casino but not paid his losses. It held that the license insulated the proprietor from criminal prosecution, but did not confer upon him any civil remedies and left him civilly subject to "all the disapprobation and restrictions of the common law." This decision was reaffirmed in West Indies, Inc. v. First National Bank, 1950, 67 Nev. 13, 214 P.2d 144. There the court held that section 1 of the Statute of Anne, which denies a remedy for collection of a gambling debt, is a part of the common law of Nevada, but that section 2, which permitted the loser to recover his losses from the gambling house, was severable, no doubt because to permit the loser to recover would defeat the objective of the statutes which license the gambling industry upon which so much of the state's economy depends. Again, in Weisbrod v. Fremont Hotel, Inc., 1958, 74 Nev. 227, 326 P.2d 1104, the Nevada court applied the same policy. In an action brought by a player to collect his winnings from the casino the court stated, "If money won at gambling is not recoverable through resort to the courts it is not because of who has won it but

because of the nature of the transaction itself."

This diversity suit, brought by a citizen of California against a Nevada gambling casino and certain individuals licensed by the state to operate it, requires us to resolve one aspect of this policy conflict without specific guidance upon the matter from the Nevada legislature or courts. In essence, appellant seeks to recover moneys that he lost in the defendants' casino because, he says, the casino used loaded dice. The district court dismissed for failure to state a claim upon which relief can be granted.

There is clearly a Nevada policy against this form of fraud. Section 465.-070 of the Nevada Revised Statutes makes it an offense, punishable by imprisonment in the State Prison for not more than ten years, for any person to win for himself or another any money by any fraudulent dice, or to entice or induce another to go to a place where fraudulent dice are used or to bet upon a game involving fraudulent dice. Section 465.-080 makes it a gross misdemeanor, punishable by a fine of not less than $1,000, or by imprisonment of not less than six months or more than one year, or both, for any person playing any licensed gambling game to use dice that have been marked, loaded or tampered with. Section 463.340 makes it a similar offense to operate a game conducted with dice that have been marked, tampered with, loaded or plugged. On the other hand, there is no express statutory provision giving the victim of such a fraud a civil remedy. The only civil liability of a gambling house operator that is expressly provided for is a vicarious liability to the parent or guardian of a minor who is permitted to gamble. (Nevada Revised Statutes § 465.100) The lack of a statutory civil remedy for the present appellant is not, in our view, determinative.

There is a conflict of authority in other states as to whether a party who has been cheated in a gambling game can recover his losses in a civil suit. The cases are collected in an annotation in 39 A.L.R.2d 1213. Those which deny recovery are based upon the doctrine of *in pari delicto*. See, for example, Babcock v. Thompson, 1826, 3 Pick. (20 Mass.) 446; Landley v. Fischer, 1929, 226 App.Div. 352, 235 N.Y.S. 368; Wallace v. Opinham, 1946, 73 Cal.App.2d 25, 165 P.2d 709. In other states a recovery has been allowed on the ground that the guilt of the parties is not equal, that of the defrauded party being less than that of the fraudulent party, so that the maxim *in pari delicto potior est conditio defendentis* cannot properly be applied. See, for example, Hobbs v. Boatwright, 1906, 195 Mo. 693, 93 S.W. 934, 5 L.R.A.,N.S., 906; Grim v. Cheatwood, 1948, 208 Okl. 570, 257 P.2d 1049, 39 A.L.R.2d 1209.

■ We must guess as to how the Nevada court would select between these two rules. Our conclusion is that, despite its apparent distaste for the Nevada gambling statutes, the Supreme Court of that state would probably uphold the claim stated in this case. We base this conclusion on three considerations. The first is that the Nevada statutes clearly indicate a legislative policy that licensed gambling houses shall be honestly conducted. (See Nevada Revised Statutes Ch. 463 and 465, and particularly §§ 463.340, 465.070 and 465.080, supra.) The second is that the Nevada Supreme Court, albeit in an entirely different setting, has refused to apply the rule of *in pari delicto* where the degree of fault is not equal. See Magill v. Lewis, 1958, 74 Nev. 381, 333 P.2d 717. The third is that the common law of England, in effect when Nevada became a state, is, except as subsequently modified by statute or decision of Nevada's courts, the law of Nevada. (Nev.Rev.St. § 1.030; cf. West Indies, Inc. v. First National Bank, supra.) And the common law rule, as of the time of Nevada's admission to the Union, appears to have been that one who lost money in a crooked gambling game could recover in a civil action. See Harris v. Bowden, Queen's Bench, 1563, Cro.Eliz. 90, 78 Eng.Rep. 348, which involved the use of crooked

dice in a gambling house; Dufour v. Ackland, 1830, 9 L.J.K.B. 3.

Defendant H. J. Munley urges that the judgment in his favor should be affirmed because his motion for summary judgment, which was denied, should have been granted. The question is not properly before us. There is nothing to prevent a renewal of the motion in the trial court, if that court is willing to hear it again.

Reversed and remanded.