**Albert WHITE, Plaintiff–Appellant,**

v.

**TURFWAY PARK RACING ASSOCIATION, INC., Defendant–Appellee.**

No. 89–6202.

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1990.

Decided Aug. 1, 1990.

Terence L. Moore, Mark D. Fischer (argued), Moore & Fischer, Cincinnati, Ohio, for plaintiff-appellant.

Kurt A. Philipps, Mark D. Guilfoyle (argued), Deters, Benzinger & Lavelle, Covington, Ky., for defendant-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.

MILBURN, Circuit Judge.

This is a timely appeal by plaintiff-appellant Albert White of the district court's summary judgment in favor of defendant-appellee Turfway Park Racing ("Turfway") in a diversity action alleging that Turfway's fraudulent and negligent failure to post the "workout time" on a horse in violation of the Kentucky Rules of Racing interfered with plaintiff's prospective economic advantage (*i.e.*, deprived him of winning a pari-mutuel betting pool). For the reasons that follow, we affirm.

I.

On March 23, 1988, plaintiff placed, through his partner, a $216 "pick-six" wager at Turfway. In order to win a pick-six wager, the wagerer must pick all six winners of races three through eight. Plaintiff chose the winning horse in five of the six races. In the seventh race, he picked the second-place horse to win. Several days later plaintiff learned that the "workout time" for the official winner of the race, a horse called Matter of Time, may not have been "announced" as required by the Rules of Racing. *See* 810 K.A.R. 1:013 § 3(7).

The record indicates that workout times were customarily "announced" by display through video monitors located throughout

the racing park. This was routinely accomplished by a telephone call from the paddock judge (in this case Gary Smith) to Turfway's independent contractors, Galjour Electronics, who operated the video system.

Matter of Time's trainer, Earl Teater, testified that he left a workout time for the horse with Smith sometime near the start of the first race of the evening. Smith, however, testified that he found the workout time on his desk shortly before the third race started. He testified that immediately upon discovering the workout time, he telephoned it to Galjour for publication. Galjour personnel could not remember the call, but they would not foreclose the possibility and admitted it was customary to receive last-minute workout times. Ronald Herbstreit, a steward at the track, testified that he checked with Galjour personnel on the night of the race in question and was assured they had received the workout time on the horse.

On the night of March 23, 1988, White's bet was placed by his partner, Leon Hughes. Hughes said that had he possessed a workout time on Matter of Time, he would have bet on the horse, reasoning that a workout time was important to assure him that the horse was sound. Hughes was impressed with the horse's past history of speed well above the other horses. Hughes testified that he watched the video monitors for a workout time on the horse and did not see it displayed. However, Hughes admitted that it was hard to view the monitors because of the crowd and admitted that he may have missed the posting of the workout time while he stood in line waiting to place his bet.

Plaintiff's negligence theory is that the racing rule requiring posting of a workout time imposed a duty on the racetrack to see that Matter of Time was disqualified and the second-place horse was declared the winner. Plaintiff's fraud theory is predicated on the same misconduct, and he claims that failure to publish the workout time was intentionally or recklessly done to benefit "insiders."

During discovery plaintiff was supplied with names of all the winners of the pick-six pool at issue here. The only evidence of a possible insider link concerned a Mr. Ruble who bet on Matter of Time and collected on a pick-six winning ticket. Ruble was admittedly a longtime friend of one of Turfway's starters, Mr. Richard Bailey. However, Bailey's deposition testimony negated a link to any inside information.

The district court interpreted plaintiff's complaint as "asking the court to determine that the winner of the seventh race ... was ineligible, and that the second-place horse should have been declared the official winner of that race." The district court concluded, "such a determination is one that is inappropriate for a federal court to make." 718 F.Supp. 615.

The principal issue presented in this appeal is whether the district court erred in holding that the Kentucky Rules of Racing, by making the steward's determination of the official order of finish final as to the pari-mutuel payoff, foreclosed plaintiff's action against the racetrack based on negligent and fraudulent failure to publish the workout time on the horse declared by the stewards to be the official winner.

## II.

### A.

■ A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. We review a grant of summary judgment de novo, *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988), viewing all facts and inferences in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party carries the burden of showing that no genuine issue of material fact exists; however, in the face of a properly supported motion for summary judgment, the nonmoving party cannot

merely rest on its pleadings, but must come forward with probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *60 Ivy Street Corp.*, 822 F.2d at 1435.

■ "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *City Communications, Inc. v. City of Detroit*, 888 F.2d 1081, 1085 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. *60 Ivy Street Corp.*, 822 F.2d at 1435. Thus, where the nonmoving party faces a heightened burden of proof, such as clear and convincing evidence, he must show in opposition to the motion for summary judgment that he can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

■ When summary judgment is granted in a diversity case by a federal district court sitting in the state whose law governs, and the judgment is based upon a district court's interpretation of state law, this court "will defer to the district court's interpretation of state law if it is permissible." *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1151 (6th Cir.1988).

### B.

■ The district court based its ruling largely on its interpretation of a previously uninterpreted rule of the Kentucky Horse Racing Commission which provides in relevant part:

Official Order of Finish as to Pari-mutuel Payoff. In the event ... cause for disqualification of any horses in a race, is brought to the attention of the stewards by the time the last jockey in a race has been weighted in, the stewards shall rule on the extent of disqualification, if any, and shall determine the placing of the horses in the official order of finish for purposes of pari-mutuel payoff. After the stewards have caused the "official" sign to be flashed on the infield result board, the order of finish so declared official shall be final, and no right of appeal thereof shall exist, insofar as the pari-mutuel payoff is concerned. Any subsequent change in the order of finish or award of purse money after the result of a race has been so declared official by the stewards shall in no way affect the pari-mutuel payoff.

810 K.A.R. 1:016 § 16 ("finality rule"); *see id.* at 1:017 § 7(1) (same rule in context of effect of objections and complaints); *id.* at 1:011 § 11(5) (same rule in context of pari-mutuel wagering rules).

In the absence of a controlling Kentucky interpretation, the district court looked elsewhere and found that courts generally hold that when bettors place their bets they consent to be bound by the state rules of racing and by the ruling of stewards as to the order of finish. *See Finlay v. Eastern Racing Ass'n*, 308 Mass. 20, 22–24, 30 N.E.2d 859, 861 (1941); *Salmore v. Empire City Racing Ass'n*, 123 N.Y.S.2d 688, 692 (N.Y.Sup.Ct.1953); *Shapiro v. Queens County Jockey Club*, 184 Misc. 295, 297–300, 53 N.Y.S.2d 135, 137–38 (N.Y.Mun.Ct. 1945). The district court was also persuaded by the reasoning of other courts that the immediate rulings of official judges should be given greater credence than the observations in court of a "disgruntled loser of a wager." *Shapiro*, 184 Misc. at 300–01, 53 N.Y.S.2d at 139; *see Discenza v. New York Racing Ass'n*, 134 Misc.2d 3, 7–8, 509 N.Y.S.2d 454, 457 (N.Y. Civ.Ct.1986). Accordingly, the district court read the finality rule as prohibiting it from reordering the finish and redistributing the pari-mutuel payoff.

■ Plaintiff recognizes that in a diversity case, considerable deference must be given to a district court's interpretation of state law, if it is permissible; however, he argues that the district court's interpreta-

tion was not permissible. Plaintiff raises a number of arguments, but one weakness is common to all of them. Plaintiff assumes that because there is a common law action for negligence and fraud, there is a common law action to recover for gambling misfortune caused by negligence and fraud. Plaintiff admits that "in the entire history of modern Kentucky thoroughbred horse racing only one patron has ever sued a Kentucky racetrack for intentionally or negligently violating the Rules of Racing. That suit is now before this court." Appellant's Brief at 33. In fact, the long history of racing without a single similar action supports an inference that Kentucky would not in fact recognize such a cause of action. *Reed v. Maley*, 115 Ky. 816, 74 S.W. 1079, 1080 (1903). Since plaintiff's arguments are grounded in a disturbance of the status quo, his inability to show that the status quo was in his favor strongly undercuts his arguments.

For example, plaintiff attempts to show that the plain language of the finality rule did not abrogate any existing cause of action without showing there was indeed such a cause of action. And we believe that, by its plain language, the rule makes the steward's determination of the official winner binding upon pari-mutuel bettors.

Plaintiff also argues that by abrogating existing causes of action, the district court's interpretation renders the finality rule an ultra vires administrative action. We find the statutes underlying the Racing Rules to be broad enough to vest authority in an official to declare a race winner and facilitate the orderly disposal of pari-mutuel winnings. We note that, in fact, plaintiff's arguments recognize the need for finality as to pari-mutuel bettors. We find it somewhat disingenuous to argue that the need for finality should be ignored anytime a *bettor can point to a technical violation of a racing rule.*

Implicit in plaintiff's argument is the contention that the racing commission could not promulgate a rule which had the effect of abrogating an existing cause of action, even if the commission were otherwise acting within its authority. We be-

lieve that *Bobinchuck v. Levitch,* 380 S.W.2d 233 (Ky.1964), undercuts this implicit argument because in *Bobinchuck* the court upheld the racing commission's authority to determine property rights in a "claiming race" and thereby eliminate a cause of action in warranty and fraud.

█ Plaintiff also argues that the district court's interpretation impermissibly modifies or vitiates K.R.S. § 446.070 which provides: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Kentucky courts have extended the rule to include violations of regulations, and the statute has been read to create an implied right of action for those persons within the "class intended to be protected by the statute [or rule]." *State Farm v. Reeder*, 763 S.W.2d 116, 118 (Ky.1988).

The district court concluded that the plaintiff in this case, as a bettor, was not "within the class protected." Plaintiff argues it is illogical to conclude that the publication rule is not intended to benefit bettors, and his argument has some persuasive effect. However, given the repeated directive in the rules that the order of finish, as declared by the steward, shall be binding on pari-mutuel bettors, 810 K.A.R. 1:011 § 11(5); *id.* at 1:016 § 16; *id.* at 1:017 § 7(1), and the rules' refusal to grant standing to bettors to challenge the eligibility of horses, 810 K.A.R. 1:017 § 1, we find the district court's reasoning more persuasive.

## C.

On appeal, plaintiff attempts to raise for the first time an argument that K.R.S. § 446.070 must be read to create a cause of action in this case because the failure to publish the workout time was a violation of K.R.S. § 518.060, which makes it a misdemeanor to tamper with a sports contest "with intent to influence the outcome." Even if we were inclined to consider this new argument on appeal, there is no more than a scintilla of evidence that the alleged omission was done with intent to influence the outcome of the race.

### D.

■ Next, plaintiff argues that the district court's interpretation denies citizens their right of access to the courts guaranteed by the Kentucky Constitution. We agree with the district court that not every injured person has a remedy and that plaintiff failed to show any right to a remedy in this case. *See Harris Corp. v. Comair, Inc.*, 510 F.Supp. 1168, 1172 (E.D.Ky.1981), *aff'd*, 712 F.2d 1069 (6th Cir.1983).

### E.

■ Finally, plaintiff argues that the authority the district court relied upon to find that wagerers are bound by stewards' rulings only applies in the absence of fraud or bad faith. We find the law in this area to be somewhat murky, and certainly not so much in plaintiff's favor as to render the district court's interpretation of the finality rule impermissible.

First, although it is not entirely clear, it seems that the fraud or bad faith alleged must be on the part of the persons "charged with the duty of decision." *Finlay*, 30 N.E.2d at 861; *Shapiro*, 53 N.Y. S.2d at 139; *see also Gillmore v. Procter & Gamble*, 417 F.2d 615, 616 (6th Cir.1969) (per curiam). Plaintiff has recognized in his brief and at oral argument that Turfway acted as a mere "stakeholder." Appellant's Brief at 15. Logically, the stewards, and not the Turfway employees, were specifically charged with determining the official winner of the race. 810 K.A.R. 1:004 § 3, *id.* at 1:011 § 11(5), *id.* at 1:016 § 16. There are no allegations that the stewards acted improperly, and plaintiff concedes that "the actions of the stewards are not the basis of [his] claims...." Appellant's Brief at 45.

Second, it appears that the language plaintiff relies on leaving open the possibility of a "bad faith exception" was only dicta, as none of the cases cited by the plaintiff presented facts suggesting fraud or bad faith. The only case which plaintiff

can cite in favor of allowing recovery by a disgruntled gambler is *Berman v. Riverside Casino Corp.*, 323 F.2d 977 (9th Cir. 1963). In *Berman*, the court allowed a gambler to maintain an action against the casino for cheating him with loaded dice. However, it does not appear that there was a delegated official in charge of making a final decision on each roll of the dice, nor was there an agency promulgated rule of finality. The cases of *Youst v. Longo*, 43 Cal.3d 64, 729 P.2d 728, 233 Cal.Rptr. 294 (1987), and *Cramer v. New York State Racing Ass'n*, 136 A.D.2d 104, 525 N.Y. S.2d 938 (1988), lend some support to the proposition that even in the presence of wrongdoing, the official winner as declared by the stewards should not be disturbed.

Even if we were inclined to accept plaintiff's argument that fraud on the part of any racing official is enough to take the case outside the finality rule, we do not find sufficient evidence of fraud to create a jury question. Though the district court did not specifically make a ruling as to whether plaintiff could make out a case of fraud [1], the arguments were presented to it in the briefs on summary judgment. Arguments as to evidence of fraud are also addressed in the briefs on appeal. Thus, we can consider the issue as an alternative basis for upholding the summary judgment. *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981).

Where the allegation is fraud, summary judgment may be granted unless there is sufficient probative evidence produced which, if believed, would clearly and convincingly establish fraud. *See Keck v. Wacker*, 413 F.Supp. 1377, 1383 (E.D.Ky. 1976) (clear and convincing standard for fraud in Kentucky); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (heightened burden of proof must be met in opposing summary judgment). Plaintiff's position is that the alleged failure to publish was an intentional or reckless omission. *See Minish v. Huey*, 482 F.2d 500, 505–06 (6th Cir.1973) (under Kentucky law intentional omission satisfies false representation element).

---

1. The district court commented that the plaintiff "probably had a right to go to the jury on the existence of conspiracy"; however, it stated at

oral argument that it was basing its ruling solely on the finality rule. J.A. 115.

The testimony of paddock judge, Gary Smith; steward, Ronald Herbstreit; and Galjour personnel is just as supportive, if not more so, of the proposition that the workout time was posted before the race than the proposition that it was not posted. The man who placed the bet, Leon Hughes, watched for a workout time in vain but could not state with certainty that a workout time was not posted. While we recognize that there is a conflict as to whether the workout time was posted, we hold that the evidence, when construed in a light most favorable to the plaintiff, does not rise to the level of clear and convincing proof of an omission.

In order to prove fraud, there must also be clear and convincing evidence that the misrepresentation was done with intent to induce reliance. *See Keck*, 413 F.Supp. at 1383. Plaintiff tries to establish intent to induce reliance by proving that the omission was for the benefit of track insiders. However, after discovering the names of all the winners of the pick-six pool at issue here, plaintiff could only identify one so-called insider.

That alleged insider was a Mr. Ruble, a longtime friend of Richard Bailey, one of Turfway's starters. Ruble bet on Matter of Time and won a share of the pick-six pool; however, Bailey's deposition testimony unqualifiedly negated any insider link to Ruble. Plaintiff's proof of an insider link not only fails to rise to the level of clear and convincing, but also appears to be based on the impermissible hope that the trier of fact would disbelieve Bailey's assertions. *See Street*, 886 F.2d at 1479 (nonmovant cannot rely on the hope that the trier of fact will disbelieve the movant but must present affirmative evidence). Thus, we hold that plaintiff failed to maintain a jury question as to the existence of fraud.

### III.

Accordingly, for the reasons stated, the judgment of the district court is affirmed.