**Pamela MARTIN, Executor of the Estate of James E. Christopher, Deceased, Plaintiff,**

v.

**DAILY EXPRESS, INC. et al., Defendants.**

No. 1:91–cv–1698.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 28, 1995.

Fred Weisman, Weisman, Goldberg, Weisman & Kaufman, Cleveland, OH, for Pamela Martin.

Dan Leonard Makee, Kenneth J. Walsh, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for Daily Express, Inc., Claremont Properties, Inc., and Paul J. Lowery.

### ORDER

O'MALLEY, Judge.

This is a wrongful death action brought by Pamela Martin, as executor of the estate of James E. Christopher. Christopher was driving on the Ohio Turnpike when a tractor-trailer rig owned by defendant Daily Express crossed the highway, leading to a head-on collision in which Christopher was killed.[1] Martin was appointed executor by a probate court in Illinois, where Christopher resided at the time of his death.

Martin brings this wrongful death action on behalf of three individuals: (1) Sam Christopher, decedent's father; (2) Bianca Worlds Mahan, a minor whom decedent allegedly fathered with Ursa Worlds; and (3) Christensen (also spelled Christiansen) King, a minor whom decedent allegedly fathered with Ella King.[2] Daily Express moved to dismiss the claims of the two minor children (docket no. 23). The Court referred the case to Magistrate Judge Patricia A. Hemann for a report and recommendation on the motion to dismiss, and the Magistrate Judge recommended that the motion be granted. Martin has filed objections to the Magistrate Judge's recommendation, and Daily Express has responded to the objections.

Because the Court finds that Martin's objections are not well-taken, Daily Express's motion to dismiss the claims of Bianca Worlds Mahan and Christensen King (docket no. 23) is GRANTED.

**The parties are directed to attend a status call with the Court on Friday, April 14, 1995 at 10:30 a.m. to discuss settlement and to schedule further proceedings in this case.** If the parties reach settlement before that time, however, the status call may be cancelled upon notice by the parties.

### II.

Daily Express filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). However, both Daily Express's motion and Martin's response refer to documents and other evidence outside of the pleadings. The Magistrate Judge's Report and Recommendation discussed "[t]he facts, based upon deposition testimony and party submissions." Report at 2. The parties did not object to the Magistrate Judge's reference to matters outside of the pleadings in their briefs urging the Court to adopt or reject the Magistrate Judge's recommendation, and the parties even make reference to and rely upon those additional matters. Accordingly, pursuant to Fed.R.Civ.P. 12(b)(6), the Court treats Daily Express's motion as one for summary judgment under Rule 56. Given the procedural history of this case, it is clear that the parties have been given reasonable opportunity to present all pertinent materials, as required under Rule 12(b)(6).

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

---

**1.** The Complaint names three defendants: (1) Paul Lowery, who drove the tractor-trailer; (2) Daily Express, the company for which Lowery worked; and (3) Claremont Properties, which owned the tractor-trailer and leased it to Daily Express. For simplicity, all defendants are referred to in this order as Daily Express.

**2.** There is some evidence that another minor, Christopher Turner, is yet a third child of decedent's, born out of wedlock to a third woman, Patricia Turner. Martin does not submit a wrongful death claim on behalf of this third child.

ty is entitled to a judgment as a matter of law. . . .

■ Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable ju-

rors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

■ Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III.

As the Magistrate Judge points out, Ohio's Wrongful Death Statute provides that a wrongful death action "shall be brought ... for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent ... and for the exclusive benefit of the other next of kin of the decedent." Ohio Rev.Code § 2125.02(A)(1). The statute does not specify, however, how an individual's status as a "child of the decedent" is to be determined. Whether a claimant is indeed a "child of the decedent" under the Wrongful Death Statute is an issue that may arise, for example, if the child is born out of wedlock.

■ Ohio courts have filled in this gap by holding that an individual born out of wedlock may establish standing as a person's child, for purposes of the Wrongful Death Statute, by using any of the recognized legal methods through which a child can establish a right of inheritance. *Hunter–Martin v. Winchester Transp., Inc.*, 71 Ohio App.3d

273, 275, 593 N.E.2d 383 (1991). These methods include the following:

> (1) the father marries the mother and acknowledges the child as his;
>
> (2) the father formally acknowledges the child in probate court, with the consent of the mother, pursuant to O.R.C. § 2105.18;
>
> (3) the father designates the child as his heir-at-law, pursuant to O.R.C. § 2105.15;
>
> (4) the father adopts the child;
>
> (5) the father provides for the child in his will; or
>
> (6) the father establishes a parent-child relationship with the child pursuant to the Ohio Parentage Act, O.R.C. § 3111 *et seq.*

*Hunter–Martin,* 71 Ohio App.3d at 275, 593 N.E.2d 383. The quality that all of these methods have in common is that the decedent *formally acknowledges* his paternal relationship with his child before death.

[7] Martin does not argue that methods 1, 3, 4, or 6 are apposite to this case. Martin does briefly argue that decedent acknowledged his paternity of both Bianca Worlds Mahan and Christensen King in probate court, arguing that the two minors have standing to bring claims under Ohio's Wrongful Death Statute under method two. This argument fails. It is undisputed that, prior to his death, decedent never appeared in any probate court in any state for the purpose of *formally* acknowledging his paternity of the two minors. Martin tries to avoid the force of this fact with two arguments. First, Martin claims that decedent implicitly acknowledged his paternity of the two minors during his life through actions such as supplying them with money, allowing them to visit on weekends, and allowing them to call him "dad." Even assuming these facts are all true, such informal actions certainly do not rise to the level of a formal acknowledgment of paternity in probate court, as contemplated by O.R.C. § 2105.18.

[8] Second, Martin asserts that the decedent acknowledged his paternity when the Circuit Court of Cook County, Illinois, Probate Division, issued an "Order Declaring Heirship" which states that, among others "the only heirs of the decedent" include "Christensen King, Minor Son" and "Bianca Worlds, Minor Daughter." [3] This argument also fails, for a number of reasons. One reason is that decedent cannot fairly be said to have acknowledged his paternity by virtue of an Order from a probate court that was issued *after his death.* Nor can this acknowledgement be said to have been "with the consent of the child's mother," when neither mother participated in the probate court proceedings.

Another reason Martin's second argument fails is that Ohio's Wrongful Death Statute states that "[t]he date of the decedent's death fixes … the status of all beneficiaries of the action for purposes of determining the damages suffered by them and the amount of damages to be awarded." O.R.C. § 2125.02(A)(3)(a). This language means that no individual can become a beneficiary under the statute by virtue of actions taken after the death of the decedent. Simply, the decedent did not take any action to formally acknowledge his paternity of the two minors before his death, and the probate court's order cannot be interpreted as a posthumous formal acknowledgement.

■ Martin relies more heavily on "method five" to argue that the two minor children have standing to assert claims under Ohio's Wrongful Death Statute. Method five involves showing that the decedent "ma[d]e a provision for the child in his will." *Hunter–Martin,* 71 Ohio App.3d at 275, 593 N.E.2d 383 (citing *White v. Randolph,* 59 Ohio St.2d 6, 391 N.E.2d 333 (1979), *appeal dismissed,* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 743 (1980)). There is no question that decedent did, in fact, provide for the two minors in his will. Specifically, decedent made the following devises and bequests:

> (1) all personal property "to my father SAM CHRISTOPHER;"
>
> (2) the remainder into trust, the income to go "to my father SAM CHRISTOPHER" for life, and thereafter "the trustee shall

---

**3.** Like the Magistrate Judge, the Court assumes that Martin could produce a certified copy of the probate court's order.

divide the trust estate into two equal parts, one for CHRISTIANSEN KING and one for BIANCA WORLDS;" and

(3) "to LACY GRAY ... and to PATRICIA TURNER ... a piece of real property from my estate, chosen in the complete discretion of the trustee."

Will at ¶¶ 2–3.

Daily Express argues that this language is not sufficient to allow Christensen King and Bianca Worlds Mahan to be considered decedent's children under Ohio's Wrongful Death Statute. First, Daily Express notes that decedent did not even refer in his Will to the minors as his son, daughter, or children, in contrast to his reference to Sam Christopher as his father. Daily Express states that the language in decedent's Will is insufficient as an acknowledgment of paternity. Second, Daily Express notes that no case has ever applied "method 5" to find that a child born out of wedlock can claim under Ohio's Wrongful Death Statute. Daily Express explains that "method 5" makes sense in the context of determining whether a child born out of wedlock can establish a *right of inheritance,* but not in the context of determining whether he can claim under the Wrongful Death Statute.

The Court agrees with the Magistrate Judge that "[p]ermitting a simple designation in a will to establish parentage, without requiring an identification of the parent-child relationship, establishes a rule of law fraught with peril.... Had [decedent] wished to use his will as a method for acknowledging paternity of Christensen King and Bianca Worlds Mahan, he could have done so by including the words 'son,' 'daughter' or 'child.'" Report and Recommendation at 14.

Furthermore, Daily Express appears to be correct in its analysis that "method 5" was "inappropriately extrapolated" from the context of whether a child born out of wedlock can establish a right of inheritance, to the context of whether he can claim under the Wrongful Death Statute. In *White v. Randolph,* 59 Ohio St.2d 6, 8, 391 N.E.2d 333 (1979), the Ohio Supreme Court stated that a child born out of wedlock could participate in her putative father's *intestate* estate if the father had, before his death: (1) formally

acknowledged the child as his, with the consent of the child's mother; (2) designated the child as his heir-at-law; or (3) adopted the child. The court added the obvious statement that an illegitimate child could share in her father's *testate* estate if the father designated the child as a beneficiary in his will. This latter statement is true, however, whether or not the father ever acknowledged the child as his, even informally. The reason for concern over claims made by children born out of wedlock is "that proof of paternity, especially after the death of the alleged father, is difficult, and peculiarly subject to abuse. One of the resultants of such abuse would be the instability of land titles of real estate left by intestate fathers of illegitimate children." *Id.* at 8, 391 N.E.2d 333. When a father, in his Will, leaves property to a child of his born out of wedlock, the necessity of proof of paternity disappears; the child takes as would any devisee, and no question of the validity of title to real estate arises. Moreover, the child would take as would any devisee, regardless of whether the father mentioned any familial relationship. That a child born out of wedlock may take from her father's estate if she is named in her father's Will does not translate, however, to an amelioration of the concerns surrounding proof of paternity. The basic reasons for a formal acknowledgement of paternity remain in the Wrongful Death context.

The other methods by which a child can show she may make a claim under the Wrongful Death Statute involve highly formal procedures of acknowledgement by the father. Merely naming a child in his will, without any suggestion in the document that the child is his, cannot be elevated to the same level of formal acknowledgement. Accordingly, the Court agrees with the Magistrate Judge and declines to accept Martin's objections on this point.

■■■■ Finally, Martin raises an equal protection argument, asserting that the Wrongful Death Statute improperly subjects children born out of wedlock and not formally acknowledged by their father, to disparate treatment from those who were formally acknowledged by their father. Martin does not raise any argument in her objections that

was not addressed by the Magistrate Judge. As the Ohio Supreme Court held when it confronted the same question in the context of the laws of inheritance:

> Clearly, the Ohio classification scheme is rationally related to the legitimate state purpose of assuring efficient disposition of property at death while avoiding spurious claims. Moreover, the Ohio provisions do not discriminate between legitimate and illegitimate children *per se.* All children may inherit from their mothers. Some illegitimate children and all legitimate children may inherit from their fathers. The group 'discriminated against' is that class of illegitimate children whose fathers did not formally acknowledge them or designate them as heirs-at-law, pursuant to R.C. 2105.18 or R.C. 2105.15.

*Id.* at 10–11, 391 N.E.2d 333 (citing *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978)). For the same reasons, the Ohio Wrongful Death Statute is not constitutionally infirm on equal protection grounds: the requirement of formal acknowledgement of paternity is rationally related to the legitimate state interest in avoiding spurious wrongful death claims, and children born out of wedlock are not discriminated against *per se.* The Court agrees with the Magistrate Judge's assessment that Martin's challenge to the Wrongful Death Statute on constitutional grounds fails.

### IV.

In summary, the Court agrees with the Report and Recommendation of the Magistrate Judge. Accordingly, Daily Express's motion to dismiss the claims of Bianca Worlds Mahan and Christensen King (docket no. 23), which the Court construes as a motion for summary judgment, is GRANTED.

**IT IS SO ORDERED.**