## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01568-SCT

*GRAND CASINO TUNICA*

*v.*

*ROBERT N. SHINDLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/01/1999 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KATHRYN H. HESTER |
| | KEITH R. RAULSTON |
| ATTORNEYS FOR APPELLEE: | CHARLES M. MERKEL, JR. |
| | JACK R. DODSON, JR. |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED-12/14/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/4/2001 |

**BEFORE BANKS, P.J., McRAE, MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Robert N. Shindler ("Shindler") filed a petition with the Mississippi Gaming Commission ("Commission") complaining that he was due additional winnings from the Grand Casino Tunica ("Grand Casino") for a series of mini-baccarat games he played on August 22, 1997. Shindler claims that although he wanted to bet $20,000 per hand, casino personnel would only let him bet $5000 at a time.

¶2. The Executive Director of the Commission assigned an agent to investigate the claim. The agent discovered many discrepancies and conflicting evidence as to Shindler's claim and, therefore, found for Grand Casino. Subsequently, Shindler filed a request for a hearing. A hearing before Honorable Larry Stroud, the Hearing Examiner, commenced on November 20, 1997, and a decision was handed down on February 3, 1998. Stroud's decision concluded that Shindler had been paid for what he bet and denied his claim to additional monies based upon what he thought he should have been paid if he had been allowed to bet as he wished. The Commission reviewed and sustained the decision on March 26, 1997. At that time, Shindler filed a timely notice of appeal to the Circuit Court of Tunica County.

¶3. The circuit judge sitting in an appellate capacity reversed the decision of the Commission ruling that it did not have jurisdiction over Shindler's claim. He suggested that Shindler should file a civil action in circuit court. Grand Casino appeals contending (1) the circuit court erred in holding that the Commission lacked jurisdiction and (2) the Commission's decision was correct on the merits.

# FACTS

¶4. The dispute in question can be fairly summarized as follows. Robert N. Shindler was gambling at the Grand Casino Tunica on August 22, 1997. Shindler, usually a craps player, decided to play mini-baccarat that evening. There are two ways to bet at mini-baccarat. First, a player may make a "regular" or "flat" bet by betting that either "player" or "banker" shall win. A regular bet pays one dollar for every dollar wagered, and the Grand Casino's maximum bet on August 22, 1997, was $20,000. The other method of betting is called a "tie bet" and pays 8 to 1 with a limit of $5000 per hand. A tie bet is exactly what it sounds like; a bet that the player and the banker will have tying hands. Although there is some controversy on this fact, a limit sign is generally posted on each table.

¶5. Shindler claims that during the course of play he asked numerous times to increase his flat bet to $20,000 per hand and was told he could not. He further alleges that casino personnel at one point told him the Commission did not allow the increasing of bets in that manner. However, there was conflicting testimony by his own witnesses as to the number of his requests and what exactly the responses were. At the same time, the Grand Casino's witnesses denied that Shindler ever asked him to increase his bet, and they stated that he only asked if he could play multiple hands. It is not unusual for the basis of someone's claim to be in controversy, but there seems to be little in this case that is not. There is disagreement, even amongst Shindler's own witnesses, over the number of hands he played; the number of hands he won; who was present at the table; and the actions of the individuals involved, including Shindler. The only uncontested facts are that Shindler was paid for the hands he won; that at no time did he ever actually try to put down more than $5000; and that Shindler stayed at the table even after he was allegedly not allowed to wager as he wished.

¶6. After reviewing the contradictory evidence, Hearing Examiner Stroud found that Shindler had been paid according to the amounts he actually wagered and that there was not sufficient evidence to prove that he was owed anything, even if he had not been allowed to bet as desired. Shindler's alleged winnings were too speculative to determine with any degree of accuracy. Finally, the hearing examiner concluded that if Grand Casino had acted as alleged, Shindler's proper remedy would be a complaint to the Commission praying for disciplinary action to be taken against the casino.

¶7. On appeal to the circuit court, Shindler asked the court to remand the case to the Commission for further findings of fact. Even though Shindler never raised the question of jurisdiction and had initiated the administrative process himself, the circuit court ruled that the Commission lacked the authority to hear the matter.

# DISCUSSION

¶8. Jurisdiction and statutory interpretation are matters of law and are therefore reviewed de novo. *Wright v. White*, 693 So. 2d 898, 900 (Miss. 1997). Thus, this court sits in the same position as if it were the Circuit Court of Tunica County.

## I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE MISSISSIPPI GAMING COMMISSION LACKED JURISDICTION.

¶9. The issue as to whether the Commission lacks jurisdiction to rule on this matter turns on how the cause of action is classified. The circuit judge characterized Shindler's claims as being based on common law tort

and contracts. Specifically, the judge felt that Shindler's allegations resembled more the doctrines of negligent misrepresentation and breach of contract than anything else. On the other hand, Grand Casino interprets the allegations as falling squarely within the exclusive jurisdiction of the Commission over gaming debts under the Mississippi Gaming Control Act, Miss. Code Ann. §§ 75-76-1 et seq. (2000). *Id.* §§ 75-76-157 - 165. The success of Shindler's argument rests upon the premise that he does not seek "gaming debts" or "alleged winnings" as defined in the Act. *Id.* §§ 75-76-157 & -159.

¶10. For well over 150 years, the law of Mississippi has stated that claims based upon any form of gambling are void and unenforceable at common law. *See McAuley's Adm'r v. Mardis*, 1 Miss. 307, 308 (1828). Furthermore, this rule stands in nearly all jurisdictions, both state and federal, and has never differentiated amongst types of actions nor the parties involved. Ronald J. Rychlak, *Lotteries, Revenues, and Social Costs: Historical Examination of State-Sponsored Gambling*, 34 B.C.L. Rev. 11, 37-38 (1992). Until this case, there had not been many serious challenges to Mississippi's rule. The Mississippi Gaming Control Act codified the idea by making all gaming matters the exclusive jurisdiction of the Mississippi Gaming Commission. Miss. Code Ann. § 75-76-157. Before the enactment of the Mississippi Gaming Control Act, casino patrons like Shindler would have had no forum in which to air their grievances. The Legislature gave the public a right that they had not possessed before, but with this right came the requirement that gaming matters be handled by the Mississippi Gaming Commission. As with the workers' compensation claims, having a special body to examine the issues is only logical; claims are often quite confusing and require a certain amount of specialized knowledge to properly analyze the various situations. In addition to the need for specialized knowledge, public policy dictates that a separate body handle gaming matters so the courts do not become overrun with claims they have neither the time nor information to handle. However, Shindler still alleges that this case does not come within the statute. He asserts that his claim does not fit the definition of "gaming debt" because he is not asking for money lost or won. He attempts to distinguish his claim on the basis that he is not claiming that he won money, rather he **should** have won money.

¶11. First, Shindler urges this Court to examine the incidents of August 22, 1997, in the light of the common law of torts. Although he had not originally argued such, Shindler now asks the Court to determine if the statements by Grand Casino personnel constitute negligent misrepresentation. Specifically, Shindler has focused on the alleged statement that the Commission would not allow him to increase his bet. In support of this argument, Shindler cites a Ninth Circuit decision in which casino personnel using loaded dice were found guilty of fraud. *Berman v. Riverside Casino Corp.*, 323 F.2d 977 (9th Cir. 1963). Originally, the suit was dismissed because individuals are not allowed to recover gambling losses in civil cases under Nevada law. *Id.* The Ninth Circuit reversed holding that the gaming industry was so important to Nevada that public policy demanded that such suits be recognized. *Id.* Shindler now urges this Court to adopt the same rule; the casino industry is so important to the Mississippi economy as to warrant allowing this type of case. However, it is important to note that *Berman* was decided long before Nevada enacted its patron dispute statutes, which are identical to the Mississippi statutes in question. In a later case after the enactment of patron dispute statutes, the Ninth Circuit held that "parties who assert they are owed a gambling debt, fraud or no fraud, are confined to the administrative process followed by state judicial review." *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 697 (9th Cir. 1991); *Devon v. Unbelievable, Inc.*, 820 F. Supp. 528, 631 (D. Nev. 1993), *aff'd mem.* 29 F.3d 631 (9th Cir. 1994). Thus, *Berman* is no longer applicable to this type of situation.

¶12. Shindler next urges the Court to view the incident as a breach of contract action. His logic is that since

gaming was and is legal at the Grand Casino Tunica, the patrons should be afforded the same protections under contract law as given other consumers. In support of this contention, Shindler cites to ***Frank v. Dore***, 635 So.2d 1369 (Miss. 1994). In ***Frank***, this Court held that § 87-1-1 (barring recovery of gambling debts) does not apply to all legalized betting operations. ***Id.*** at 1374. Thus, under this case, since gambling was legal at the Grand Casino Tunica on August 22, 1997, his claims are not barred from suit. However, ***Frank*** dealt with a controversy involving a charitable bingo, and the present situation involves a casino. ***Id.*** The difference is important. While there was no other remedy in charity bingo controversies, the Gaming Control Act does allow for recovery of a gaming debt, **but** only through the Gaming Commission's administrative process.

¶13. Grand Casino further supports its opposition to the transaction being classified as a breach of contract with an alternative interpretation of when the contract was formed, even assuming Shindler was restricted from placing the bet he desired. Under Shindler's theory, the table limit sign (which he oddly denies was even there) was an offer to gamble at those terms. Shindler asserts that a contract was formed when he sat down at the table, thus accepting the casino's offer. Grand Casino's interpretation, which is more analogous to the law-exam-favorite of a department store advertisement, is that Shindler merely offered to bet $20,000 and the casino rejected his offer. Under this theory, there never existed a contract for a $20,000 bet to be breached because he never actually put $20,000 on the table to bet.

¶14. At first glance, it appears as if this case could be disposed of quickly under the theory judicial estoppel. After all, Shindler did initiate the administrative process of the Gaming Commission himself. It is a fundamental principle that parties may not continually relitigate the same claims until they get the desired result. Judicial estoppel is a safeguard against such behavior. "[A]s a general rule a party is estopped from taking a position which is inconsistent with the one previously assumed in the course of the same action or proceeding."***Mississippi State Highway Comm'n v. West***, 181 Miss. 206, 179 So. 279, 283 (1938). However, the present case clearly deals with a ruling that runs contrary to the plain language of a statute. In addition, it is obvious that the circuit judge, not Shindler himself, took a position inconsistent with his earlier stance; thus, judicial estoppel does not apply.

¶15. Shindler and the circuit court's thinking does not add up: The Gaming Commission does not have jurisdiction over the claim because it does not concern a "gaming debt" nor "alleged winnings"; it concerns a contract for a gaming debt and a possible misrepresentation about alleged winnings. Shindler's present claims obviously fall within those that were barred at common law. As has been illustrated, Shindler's claim falls squarely within the statutory definition of a "gaming debt" and "alleged winnings." The Legislature, through the enactment of the Gaming Control Act, extended a right of recovery to gaming patrons. Without the enactment, Shindler and other dissatisfied gamblers would have no remedy or forum in which to air their grievances. In essence, the creation of the Gaming Commission gave citizens more rights than they previously possessed. As the statute clearly states, the Gaming Commission has exclusive jurisdiction over such claims. Miss. Code Ann. § 75-76-157. Therefore, the Gaming Commission was the only body with jurisdiction to hear this matter.

## II. WHETHER THE COMMISSION'S DECISION WAS CORRECT ON THE MERITS.

¶16. Although the circumstances of the circuit judge's ruling are unusual, the circuit court is merely a gatekeeper for patron dispute actions. *Id.* § 75-76-173. This case would have appeared before this Court upon a normal appeal, and it is therefore appropriate that we examine the merits now.

¶17. Under Miss. Code Ann. § 75-76-171(3), a court reviewing a decision of the Gaming Commission may "reverse the decision if the substantial rights of the petitioner have been prejudiced because the decision is: (a) In violation of constitutional provisions; (b) In excess of the statutory authority or jurisdiction of the commission; (c) Made upon unlawful procedure; (d) Unsupported by any evidence; or (e) Arbitrary or capricious or otherwise not in accordance with law." Grand Casino asserts that this statutory provision demands that not only should the circuit court's decision be reversed, there is also no need to remand because the Commission's decision originally should have been affirmed. As an element to this argument, Grand Casino asserts that the Commission's decision did not violate any of the enumerated causes for reversal. From the facts and procedural posture presented, the Gaming Commission's decision does not appear to have violated any of these principles.

¶18. Once again, Shindler's counter-argument is to classify the claims as common law actions as to which the Commission did not rule, making reversal of its decision necessary. He suggests that since his arguments belong in front of a civil jury, they were not properly addressed by the Commission. The theory is as follows. Under Miss. Const. art. 3, § 31, a civil plaintiff has a constitutional right to a jury trial. Since Shindler's claims are based on common law doctrine and he did not have a jury at the Commission hearing, he has been denied a constitutional right. Therefore, according to Shindler, the circuit court was bound to reverse the Commission's decision, even considering § 75-76-171(3).

¶19. Since the Commission had jurisdiction and Shindler's theory is not persuasive, the Commission's decision should not have been reversed and in fact should be reinstated.

## CONCLUSION

¶20. The clear language of the statute dictates that any and all gaming debts are subject to the exclusive jurisdiction of the Mississippi Gaming Commission. No matter what Shindler asserts to the contrary, his claims are most certainly for the collection of gaming debts. Furthermore, if the claims are viewed in the light of the common law, Shindler has no right to recovery. The Legislature gave casino patrons a right they previous lacked and an administrative process in which to handle their controversies. The circuit judge erred in holding that the Gaming Commission lacked jurisdiction. Furthermore, we find that there is no legal justification to reverse the holding of the Gaming Commission. Therefore, the judgment of the Tunica County Circuit Court is reversed and rendered, and the decision of the Mississippi Gaming Commission is reinstated.

¶21. **REVERSED AND RENDERED.**

**PITTMAN AND BANKS, P.JJ., McRAE, SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING.**