Daniel A. DZINA, Plaintiff

v.

UNITED STATES of America, Defendant

No. 1:02 CV 2436.

United States District Court, N.D. Ohio. Eastern Division.

Sept. 30, 2004.

E. Roger Stewart, McCarthy Lebit Crystal & Liffman, Cleveland, OH, James E. Burns, Cleveland Heights, OH, Mark B. Cohn, McCarthy, Lebit, Crystal & Haiman, Cleveland, OH, Patrick J. Holland, Fairview Park, OH, for Plaintiff.

Richard C. Ambrow, Stephen A. Sherman, Washington, DC, for Defendant.

Scott D. Simpkins, Climaco Lefkowitz Peca Wilcox & Garofoli, Cleveland, OH, for Interested Party.

### ORDER

OLIVER, District Judge.

Currently pending before the court is Plaintiff Daniel Dzina's ("Dzina") Motion for Summary Judgment (ECF No. 37). For the reasons set forth below, the Motion is denied.

## I. FACTS

In December 1993, North Point Athletic Club II, Inc. ("NorthPoint"), an S-corporation wholly owned by Plaintiff Dzina, purchased property located at 18909 South Miles Road, Warrensville Heights, Ohio ("Miles Property"). In previous years, the Miles Property had been used as a racquet club, but had been vacant and unused for eight years at the time Dzina purchased it. The purchase price was $435,000.

Slightly over one year after NorthPoint purchased the Miles Property, Dzina agreed to sell the Miles Property to the Cleveland Golden Gloves Association, Inc. ("Golden Gloves"), a charitable organization with which Dzina was affiliated as an executive and trustee. The contract, signed on January 12, 1995, called for Golden Gloves to pay NorthPoint $2,000,000, payable in 120 monthly installments of $24,931.04. Under the contract, Golden Gloves was responsible for any improvements to the Miles Property, but in the event of default, any improvements would remain a part of the Miles Property if it reverted back to NorthPoint.

Golden Gloves took possession of a portion of the Miles Property, which it used to hold bingo games and boxing matches. The other parts of the Miles Property were occupied by several rental tenants, although there is some dispute as to both the effective dates of the tenancies and whether it was NorthPoint or Golden Gloves that collected the rent. Regardless, Golden Gloves made no payments to NorthPoint under the land sale contract. At some point between October 1995 and May 1996, Dzina declared Golden Gloves in default on the contract.

In June 1996, Golden Gloves and North-Point entered into a second agreement for the Miles Property. Under the restated land sale contract, Golden Gloves would purchase only the portion of the Miles Property they were currently using, approximately 20% of the property. The price was $477,000, payable in monthly installments, under the same terms as the original contract. Golden Gloves made no payments under the restated contract, and in January 1997 Golden Gloves and North-Point entered into a third agreement regarding the Miles Property, this time for a lease. Under the lease arrangement, Golden Gloves would pay $450 per bingo night to NorthPoint and continue using the property for bingo. Just as before, Golden Gloves made no lease payments to North-point.

In July 1997, NorthPoint sold the Miles Property to Cleveland Sportsplex, Ltd., for between $2.1 and $2.9 million (the purchase price is a matter of dispute between the parties). (Dzina Aff. at ¶ 6; Def. Ex. 6 at 2).

Neither party disputes that Dzina, NorthPoint, and Golden Gloves made substantial improvements to the land between 1993 and 1997, although when the repairs were made and who paid the bill are disputed facts. Dzina contends that he renovated the parking lots and surrounding grounds of the property prior to selling it to Golden Gloves; the United States offers several affidavits claiming that the parking improvements did not begin until after the sale to Golden Gloves. (Dzina Aff. at ¶ 11;

Def. Ex. 28 at ¶ 2–3; Def. Ex. 29 at ¶ 6). Dzina contends that NorthPoint paid for many improvements inside the complex; the Internal Revenue Service ("IRS") contends that the bulk of the improvements contributing to the meteoric rise in the property value were paid for by Golden Gloves.

There is also a factual dispute between the parties as to the actual value of the Miles Property at the time of the initial sale to Golden Gloves. Dzina claims he received an oral appraisal in January 1995, valuing the Miles Property at $2,000,000. (Dzina Aff. at ¶ 21). The United States offers an affidavit from the president of the appraisal firm Dzina reported using, in which the firm denies giving any oral appraisal in 1995. (Def. Ex. 31 at ¶ 4–6). The appraiser did report doing a full appraisal in January 1996, in which he valued the Miles Property at $2,050,000.

In December, 2001, the IRS issued a Notice of Deficiency to Dzina and assessed excise taxes against NorthPoint and Dzina for excess benefits he received as a result of his dealings with Golden Gloves and the Miles Property. The IRS asserted first tier taxes against Dzina of $106,521, and potential second tier taxes[1] of $608,689. Dzina paid the first tier taxes and filed this action against the United States to collect a full refund of the excess benefits tax.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standard. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio

---

1. Second-tier taxes are due only if Dzina does not correct the alleged excess benefit transac-

tions (by returning benefits to Golden Gloves), within a set period of time.

1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## III. LAW AND ANALYSIS

The IRS assessed excise taxes on Plaintiff Dzina for excess benefit transactions between Plaintiff's NorthPoint Corporation and the non-profit Golden Gloves. Dzina's Motion for Summary Judgment sets forth two reasons why the IRS was wrong to assess excise taxes against him: (1) Dzina and NorthPoint received no excess benefit from their dealings with Golden Gloves because the consideration Golden Gloves received from the relationship was greater than the economic benefit Dzina and NorthPoint received; and (2) all improvements made pursuant to the land contract between NorthPoint and Gloves are not subject to excise taxes because the contract was in effect prior to the September 14, 1995 effective date of the statute. Because each argument addresses the ultimate issue of whether Dzina received any excess benefit and whether the IRS assessment was proper, this court analyzes Plaintiff's arguments together in the context of the excess benefit statute. Further, this court proceeds in its analysis despite the lack of any case law cited by either party to support their position.

Plaintiff challenges the validity of taxes assessed against him under the excess benefit provision of the tax code. The statute applies to private individuals who unfairly profit in their financial dealings with charitable organizations, and provides for an excise tax on:

> *[a]ny transaction in which an economic benefit is provided by an applicable tax-exempt organization directly or indirectly to or for the use of any disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing such benefit. For purposes of the preceding sentence, an economic benefit shall not be treated as consideration for the performance of services unless such organization clearly indicated its intent to so treat such benefit.*

26 U.S.C. § 4958(c)(1)(A). The parties agree that Dzina, as a person in a position to exercise substantial influence over the affairs of the tax-exempt organization, is a disqualified person under the statute; the only dispute is whether Dzina received an excess benefit. Separate analyses of (A) the economic benefit received by Dzina, and (B) the value of the consideration received by Golden Gloves for providing the benefit, demonstrate that there are a substantial number of genuine disputes regarding material issues of fact. These disputes render a finding of summary judgment inappropriate.

### A. Dzina and NorthPoint's Economic Benefit

Dzina contends that the only benefits he or NorthPoint received from its transactions with Golden Gloves were charitable deductions in 1996, and 1997, resulting in tax savings of $88,081. The United States disputes this contention and alleges that Dzina and NorthPoint reaped substantial benefits from their dealings with Golden Gloves in two ways: (1) by reclaiming the property upon default on the land sale contract, improved by more than $300,000 in renovations and repairs paid for by Golden Gloves and (2) by selling the property to Cleveland SportsPlex for over $2,000,000 more than he paid for it.

### 1. Reclamation of Improved Property

The government asserts that Dzina benefitted by selling the Miles Property to

Golden Gloves and later reclaiming the property and its improvements after Golden Gloves had made at least $300,000 worth of renovations. The IRS' initial assessment was based only on these renovations and Dzina's subsequent reclamation of ownership upon declaration of Golden Gloves' default. Dzina raises objections to the government's conclusion on three grounds: (a) the improvement expenditures were made pursuant to a contract made prior to the September 14, 1995 effective date of the excess benefit statute; (b) under § 109 of the Internal Revenue Code, the IRS does not treat property improvements that revert to the lessor as income; and (c) $300,000 is not an accurate reflection of the value of the repairs Golden Gloves made.

*a. September 14, 1995 Statutory Cut–Off*

■ Plaintiff argues that no activities under the first land sale contract are subject to excess benefit taxes, because the contract went into effect prior to the effective date of the excess benefit statute. He claims that all improvement expenditures made by Golden Gloves between January 1995 and June 1996 were made pursuant to the January 1995 contract, and that any excess benefit he received is not taxable under the statute. The excess benefit statute explicitly applies only to "transactions occurring on or after September 13, 1995." 26 C.F.R. § 53.4958–1(f)(1). It does not apply "to any transaction occurring pursuant to a written contract that was binding on September 13, 1995 and at all times thereafter before the transaction occurs." *Id.* at 53.4958(f)(2).

The government counters that its assessments were not based upon payments due under the land sale contract, but based on improvements made after September 13, 1995 (the "Effective Date"). The IRS did not assess excess benefit taxes for specific improvements Golden Gloves made prior to September 13, 1995; they assessed taxes for improvements and transactions made after the September date. It follows from this argument that the government does not view these post-September improvements as transactions under or pursuant to the land sale contract.

This court begins by looking to the plain text of the statute. In doing so, the court notes that neither party has cited any case law interpreting the statute. On its terms, the statute exempts any transactions pursuant to any written contract that was binding on the Effective Date. It exempts all transactions under the contract, even if the transactions occurred after the Effective Date. The land sale contract between NorthPoint and Golden Gloves was in effect on September 13, 1995. It was a "written contract that was binding on September 13, 1995 and at all times thereafter before the transaction." *Id.* Therefore, "any transaction occurring pursuant to" the land sale contract is exempt from excess benefit taxes. A term in the contract stated that improvements to the Miles Property would revert to NorthPoint in the event of Golden Gloves' default. The court concludes that the actual reversion of the improvements is a "transaction" under the contract. Because the January 1995 land sale contract was binding on and after the Effective Date, and the reversion of the improvements was a transaction pursuant to the contract, any excess benefit taxes levied on the improvements are barred by the statute.

■ However, there is a factual dispute between the parties as to when the improvements made under the January 1995 land sale contract actually reverted to Dzina. Dzina claims the contract was in effect until June 1996, when it was replaced with the restated land sale contract. He offers the restated land sale contract, dat-

ed June 1996, as evidence. The government asserts that Dzina declared a default on the January 1995 contract at some point in late December 1995. It offers a lease that NorthPoint signed with a hair salon tenant at the Miles Property in January 1996 as evidence that Golden Gloves no longer owned the property since North-Point was putting its own name on leases. Def. Ex. 8. The government only taxed $741 worth of improvements in 1995, which could be consistent with the statute if the land sale contract did end in late 1995. Since the exact default date of the January 1995 land sale contract is a disputed fact, this court is unable to determine how much of the excess benefit assessed by the IRS is barred by the Effective Date clause of the excess benefit statute. However, based on the information before it, this court concludes that renovations made during the term of the January 1995 land sale contract are preempted from excess benefit taxes by the Internal Revenue Code.

### b. Internal Revenue Code Section 109

■ Dzina contends that any benefit NorthPoint received from Golden Gloves' improvement expenditures is not a part of NorthPoint's gross income, and therefore not a part of the economic benefit for the excess benefit calculation. Under the Internal Revenue Code, "Gross income does not include income (other than rent) derived by a lessor of real property on the termination of a lease, representing the value of such property attributable to buildings erected or other improvements made by the lessee." 26 U.S.C. § 109. However, this portion of the Internal Revenue Code applies to leases and rental contracts, not to land sale contracts. The first two agreements between NorthPoint and Golden Gloves were land sale contracts, covering the period from January 1995, to January 1997. As such, 26 U.S.C.

§ 109 does not apply to improvements made under the land sale contracts, and Dzina cannot claim that these improvements are not a part of NorthPoint's gross income.

However, 26 U.S.C. § 109 *could* apply to improvements made by Golden Gloves during the time it was renting the Miles Property, from January 1997, to June 1997. The statute would apply, and Golden Gloves' improvements would not count as gross income for NorthPoint, if North-Point terminated the lease. However, NorthPoint never terminated the Golden Gloves lease; SportsPlex bought the Miles Property and assumed the lease. Therefore, 26 U.S.C. § 109 is inapplicable to any of NorthPoint's income from any of the improvements Golden Gloves made.

### c. $300,000 is not an accurate representation of Golden Gloves' improvement expenditures

■ The parties disagree on the exact dollar value of repairs paid for by Golden Gloves from September 14, 1995, to June 1997. Dzina claims that NorthPoint paid for all repairs made by Golden Gloves from June 1996 forward, and disagrees with the government's accounting of repairs made prior to June 1996. He says Golden Gloves spent $145,250 in renovations between January and June 1996, and NorthPoint spent $53,819 after June, 1996. (Dzina Aff. ¶ 38, 39). The United States claims Golden Gloves' financial records show that the charity made $273,769 worth of renovations in 1996. (Def. Br. at 8; Def. Ex. 1, 18–20). There is a discrepancy of over $125,000 between the government's view of the fact and Dzina's. The exact value of the improvements paid for by Golden Gloves is a disputed issue of material fact, the resolution of which will effect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since there is a dispute over a material fact, summary judgment is inappropriate.

## 2. Subsequent Sale to Cleveland SportsPlex

In its brief, the government points to the subsequent sale to Cleveland SportsPlex as additional evidence of Plaintiff's economic benefit. Dzina purchased the Miles Property for $435,000 and made some renovations, the extent and timing of which are disputed by the parties. Dzina then sold the Miles Property to Golden Gloves for $2,000,000 less than a year after he bought it. After Golden Gloves had occupied the Miles Property for one year, during which both NorthPoint and Golden Gloves made extensive renovations, an independent appraiser assessed the Miles Property at $2,050,000 in January 1996. Eighteen months later, NorthPoint sold the property for between $2,154,000 and $2,900,000; the purchase price is a disputed issue of fact between the parties. Dzina asserts that he sold for the lower number, but the actual land sale contract submitted by the government contains the higher number. The government asserts that the property value increased by well over $800,000[2] during the period when Golden Gloves "owned" it, and the full benefit of the $800,000 increase flowed to Dzina and NorthPoint since Golden Gloves received no proceeds from he sale to Cleveland SportsPlex.

Dzina disputes the government's facts. He asserts that the initial renovations to the parking and structure of the property boosted its value to $2,000,000[3] before Golden Gloves moved in. According to Dzina, Cleveland SportsPlex purchased the Miles Property for $2,150,000, only a slight increase in value of $150,000 over 18 months. Dzina attributes the increase in value to improvements made and paid for by NorthPoint, and cites the fact that when it took over the property, Cleveland SportsPlex removed many of the renovations put in by Golden Gloves.

The government has raised genuine disputes of material facts regarding the extent to which Dzina benefitted from the NorthPoint-Golden Gloves relationship at the Miles Property.

## B. Consideration Received by Golden Gloves

The second half of an excess benefit determination is a calculation of the consideration received by a charity in payment for the benefit conferred on the disqualified party. 26 U.S.C. § 4958(c)(1)(A). The parties disagree on the consideration received by Golden Gloves. The government argues that Golden Gloves received no benefit, while Dzina identifies three categories of consideration received by Golden Gloves: (1) free rental space; (2) rental income from other tenants; and (3) use of improvements paid for by NorthPoint.

### 1. Free Rental Space

Dzina asserts that Golden Gloves had free use of the Miles Property for over two years because the charity failed to make payments under any of its three land contracts with NorthPoint. Dzina values this

**2.** If the property was valued at $2,050,000 in January 1996, its actual value must have been substantially lower when Golden Gloves purchased it in January 1995. Therefore, if Dzina sold the property in 1997 for $2,900,000, the benefit to Dzina from Golden Gloves' improvements is well over $800,000.

**3.** Dzina submits that an independent assessment firm gave an informal valuation of the property in January 1995 and valued it at $2,000,000. The government submits an affidavit from Dzina's assessment firm claiming the firm performed no such assessment until late 1995/early 1996.

rental benefit at between $433,000 (at a rental rate of $2.00/square foot) and $515,000 (the sum of the monthly contract payments). The government counters that for free rental space to count as consideration to Golden Gloves, NorthPoint would have had to have recognized some rental income for tax purposes, something NorthPoint's tax returns do not reflect.

Additionally, the government submits affidavits from Golden Gloves board members suggesting that Dzina never intended to collect payments from Golden Gloves, and that he instead poured all of Golden Gloves' funds into renovations that would subsequently revert to NorthPoint. (*See* Def. Ex. 33 ¶ 15). Under this theory, Golden Gloves received no "free rent" because any benefit it received from "free" use of the Miles Property, primarily bingo proceeds, was being spent for NorthPoint's benefit. To support its theory, the government submits affidavits from Golden Gloves trustees who claim Dzina kept them in the dark about Golden Gloves' financial situation and arrangements with NorthPoint, and fabricated minutes from Golden Gloves' Board of Directors meetings. Def. Ex. 30, 32, 33. If the government's allegations are true, Golden Gloves received no consideration from its "free rent" situation. Based on these questions of fact, a jury could reasonably conclude that Golden Gloves received less than $433,000 in legal consideration based on free rental space.

## 2. Rental Income

Dzina also contends that Golden Gloves received substantial rental income from the other tenants at the Miles Property of just under $13,000/month, totaling $153,200 over the course of Golden Gloves' ownership. He offers rental payment records from the major tenant, Soccer Stars, as evidence of this consideration. The government counters with financial records from Golden Gloves reporting zero rental income in 1995 and only $4,400 of rental income in 1996. It is a disputed issue of material fact whether Golden Gloves received $153,200 in rental income from the Miles Property, best left to a factfinder at trial.

## 3. Benefit from NorthPoint's Improvements

The final category of consideration Dzina suggests are improvements to the Miles Property paid for by NorthPoint and for the specific benefit of Golden Gloves. NorthPoint lent $54,000 to Golden Gloves for painting, air conditioning, finishing the interior to hold bingo and boxing activities, and complying with local fire and safety ordinances necessary to hold public gatherings. Dzina claims that these were not capital improvements, but necessary expenses that provided a direct and exclusive benefit to Golden Gloves, and they should be counted as consideration in the excess benefit calculation. The government argues that the $54,000 figure is not supported by Dzina's financial statements which lump improvements to multiple properties into one financial statement. This dispute presents another genuine dispute as to a material fact.

The government presents factual disputes with regard to each category of consideration Dzina asserts. Based on these disputes over material facts, it is improper for this court to reach a conclusion on the specific dollar value of consideration Golden Gloves received from its relationship with NorthPoint and the Miles Property.

## IV. CONCLUSION

For these reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 37) is denied. The government has met its burden of pointing out specific facts in the record which create a genuine issue of material

fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992). There are numerous factual disputes in this case that render summary judgment improper at this time, and make any judicial conclusion about the validity of the IRS excess benefit calculation premature.

The court hereby sets a final pretrial conference in the within case for November 19, 2004, at 10:00 a.m. Trial shall commence on December 6, 2004, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.